150 N.J. Super. 550 (1977)
376 A.2d 211
IN THE MATTER OF THE ESTATE OF WALTER BECHTOLD, DECEASED.
Superior Court of New Jersey, Chancery Division.
Decided May 19, 1977.
*552 Mr. James R. Beattie, for plaintiffs (Messrs. Beattie & Padovano, attorneys).
Mr. John J. Oberdorf, for Alice Williams, executrix/guardian. (Mr. Richard J. Cummins, attorney).
GELMAN, J.S.C.
Walter Bechtold was adjudicated a mental incompetent on June 29, 1973. The incompetency proceeding was instituted by the present defendant, his sister Alice Williams, who was appointed and served as his guardian until his death on November 8, 1976. Plaintiffs in this action are the remaining siblings of Walter, who seek to set aside his last will and testament dated March 22, 1974, in which he left his entire estate to Alice Williams, and his September 26, 1975 conveyance of his home to Alice Williams.
This case raises for the first time the construction of N.J.S.A. 3A:6-39, which reads:
If the mental incompetent dies intestate or without any will except such as was executed after commencement of proceedings which ultimately resulted in the judgment of incompetency, and before a judgment has been entered adjudicating a return to competency, his property, real and personal, shall descend and be distributed as in the case of intestacy.[1]
*553 Plaintiffs argue that under this statute Walter's 1974 will is not entitled to probate and is of no effect as a valid testamentary disposition. Defendant argues that under the case law of New Jersey the standard for testamentary capacity is not as strict as for mental competency, and that the statute merely sets up a rebuttable presumption that the 1974 will is invalid. Defendant has submitted affidavits in support of her contention that Walter was never mentally incompetent, one of which is by the attorney who drew the 1974 will and the 1975 conveyance.
Initially we note that it was defendant herself who brought the incompetency proceeding in 1973 and that a physician testified at that hearing as follows:
In my opinion, he [Walter] is totally and permanently disabled mentally, and the prognosis is poor because of his mental deterioration, which is progressive. He is undoubtedly incapable of handling his own finances. I feel that the ultimate outcome is a vegetative existence associated with cerebral atrophy.
The legal effect of an adjudication of incompetency is that the ward is divested of all control and management of his property. Lommason v. Washington Trust Co., 140 N.J. Eq. 207, 209 (E. & A. 1947). The only way a ward can be revested with legal capacity to manage his own affairs is through an adjudication that he has returned to competency. See N.J.S.A. 3A:6-43. No such proceeding was ever brought by Walter or on his behalf in spite of defendant's contention that the incompetency proceeding was simply an expedient device whereby she could care for her brother's physical needs.
In support of her argument that N.J.S.A. 3A:6-39 simply sets up a presumption of incapacity to execute a will after the commencement of incompetency proceedings, defendant cites American National Red Cross v. Lester, 129 N.J. Eq. 28 (E. & A. 1941). This case is not dispositive of the issue presented herein for two reasons. First, it was decided under a predecessor statute, the language of which *554 was less explicit; and second, the facts in Lester were significantly different. The statute under which Lester was decided provided that
All cases of idiocy and lunacy shall be determined by an inquest * * * and in case he or she shall die in his or her lunacy, such lands and tenements shall descend and go to his or her heirs, and the residue of the goods, chattels and profits, after payment of his or her just debts, shall go to and be distributed according to law among such lunatic's next of kin. [2 Comp. Stat. 2782]
The facts in Lester were that a will was executed on November 13, 1928 by a person who, on April 26, 1930, was adjudicated a lunatic and who was found to have "been in the same state of lunacy for the space of two years last past and upwards." As to this retrospective adjudication of incompetency, the court held that the finding of lunacy raised only a rebuttable presumption that the 1928 will was invalid. See also In re Coleman's Will, 88 N.J. Eq. 284 (Prerog. 1917), aff'd. 88 N.J. Eq. 578 (E. & A. 1917); Whitenack v. Stryker and Voorhies, 2 N.J. Eq. 8, 28 (Prerog. 1838). In Whitenack the court considered the admissibility to probate of two codicils, one written on August 31, 1833 and one written on August 11, 1835. In addition, there were two incompetency inquisitions. By the first, dated May 30, 1834, testator was found to be a lunatic enjoying "lucid intervals" and who had been in the same state for 30 months prior thereto. By the second, dated January 1, 1836, testator was found to have been of unsound mind and incapable of managing his affairs since December, 1832. Due to the initial finding that the lunatic enjoyed "lucid intervals," both codicils were executed prior to a final adjudication of present incompetency, and the court admitted the codicils to probate upon testimony that testator had been competent at the times of execution.
The reasoning of the early cases rejecting a conclusive presumption is sound where a will is executed prior to an adjudication of incompetency. A finding as to a person's *555 competency a year or two before a hearing is necessarily speculative. A finding of present incompetency, however, based upon the testimony of two physicians who have examined the alleged incompetent within 20 days of the filing of the complaint does not suffer from the same speculative quality. See R. 4:83-2(b).
From the language of N.J.S.A. 3A:6-39 it seems clear that the draftsmen were cognizant of the earlier cases. The statute explicitly provides that an incompetent will be deemed to have died intestate if his only will was executed after the commencement of incompetency proceedings. The Legislature has thereby established a cut-off point after which any litigation as to a deceased incompetent's testamentary capacity is barred. Thus, defendant's request for a plenary hearing at which she will seek to prove her brother's testamentary capacity nine months after he was adjudicated incompetent is prohibited by the statute.
Defendant submits that the statute, as construed herein, is a violation of the Due Process and Equal Protection clauses of the United States Constitution. This argument is totally without merit. The Legislature has, in innumerable instances, set up statutory requirements for the admissibility of wills and contracts. See, e.g., N.J.S.A. 3A:3-2 and N.J.S.A. 25:1-1. The conclusive invalidity of an incompetent's will is no more a denial of equal protection to an adjudicated incompetent than is the conclusive invalidity of an oral contract for the sale of land to a person who is ignorant of the statute of frauds. In both instances, the Legislature has exercised its prerogative to bar litigation of issues which are difficult, if not impossible, to prove.[2]
*556 Finally, defendant argues that the 1975 conveyance of Walter's realty to her, without consideration, should not be set aside for lack of court approval, as required by N.J.S.A. 3A:6-37, because the transfer was made by Walter rather than by her as guardian. That transfer must be set aside, not because it fails to comply with N.J.S.A. 3A:6-37, but because Walter, as an adjudicated incompetent, lacked the legal capacity to convey land. The case law that upholds conveyances of an incompetent for valid consideration to a person who lacks knowledge of the transferor's incapacity are obviously inapplicable. See Yauger v. Skinner, 14 N.J. Eq. 389 (Ch. 1862).
For the reasons heretofore stated, the 1975 conveyance will be set aside and the 1974 will will be denied probate. Since Walter left no will executed prior to the commencement of his incompetency proceeding his estate will pass under the laws of intestacy.
NOTES
[1] There is one written comment on this statute: James Bayard Smith, "Wills, Lunatics and N.J.S.A. 3A:6-39," 69 N.J. State Bar J. 48 (Fall 1974). The author concludes that the statute sets up a rebuttable presumption of testamentary incapacity. This conclusion is based, however, upon an interpretation of Whitenack v. Stryker and Voorhies, 2 N.J. Eq. 8 (Prerog. 1838), which overlooks the fact that the first incompetency adjudication found that the incompetent had lucid intervals and upon reasoning with which we disagree, i.e., if our courts have admitted evidence of testamentary capacity where there is a retrospective finding of incompetency then it is logical that our courts should also admit such evidence where a will is executed after an incompetency adjudication.
[2] The statute of frauds was originally enacted to prevent fraud and perjury in the enforcement of obligations depending for their evidence on the memory of witnesses. Weber v. De Cecco, 1 N.J. Super. 353, 358 (Ch. Div. 1948)