Karen SIRKIN, an incompetent by her Legal Guardian, Jeffrey ALBIES, Plaintiff,

v.

PHILLIPS COLLEGES, INC., the Katherine Gibbs School (Incorporated) and Fox–Everett, Inc., jointly, severally or in the alternative, Defendants.

Civ. A. No. 90–3890.

United States District Court, D. New Jersey.

Nov. 20, 1991.

Richard M. Flexner, Hackensack, N.J., for Karen Sirkin.

Christopher H. Mills, Collier, Jacob & Sweet, Somerset, N.J., for Phillips Colleges.

## OPINION

SAROKIN, District Judge.

*Introduction*

Plaintiff, a mental incompetent, seeks to reinstate certain health plan benefits which lapsed due to her failure to make payments during her incompetency. Defendants contend that the federal statutes which apply in this matter make no provision or allowance for such extensions due to incapacity, and thus coverage cannot be reinstated once there has been a default in premiums no matter what the cause. Thus, not only do defendants refuse to voluntarily remedy this harsh result, but they contend that they cannot be compelled to do so.

The court is satisfied that where a person entitled to coverage has evidenced an intent to continue such coverage by making timely premium payments, and becomes physically or mentally incapacitated from knowing of the obligation or paying or arranging for payments of the premium, then such person is entitled to reinstate such coverage by paying the amount due within a reasonable time after the disability ends or a representative is appointed to act for such person. Principles of equity and common decency suggest that a person should not be deprived of desired and needed coverage when incapacitated from continuing it.

Defendants suggest that such a rule would permit persons to seek the same result if an injury reduced or terminated their earning ability. But no such collateral consequence is involved or intended here. The disability which gives rise to this ruling deprived plaintiff of knowing of her obligation and meeting it. Those circumstances warrant a reasonable opportunity to cure the default and reinstate the coverage. Indeed, one might hope that the involuntary circumstances which caused the plaintiff to default would have prompted the voluntary reinstatement of her benefits.

*Background*

Before the court is defendants' joint motion for summary judgment. As mentioned above, plaintiff, Karen Sirkin, is a mental incompetent. Plaintiff's legal guardian, Jeffrey Albies, prosecutes this action to recover benefits under Ms. Sirkin's Health plan pursuant to ERISA, 29 U.S.C. § 1001, *et seq.*, and COBRA, 29 U.S.C. § 1161, *et seq.* Ms. Sirkin had been an employee of defendant The Katherine Gibbs School, Inc., until July 22, 1990. As an employee of The Katherine Gibbs School, plaintiff participated in co-defendant Phillips Colleges, Inc.'s Medical Benefits Plan, which coverage continued until July 15, 1990. (For a summary of the Plan description, see Martin Aff't, Exh. A.) Co-defendant Fox–Everett, Inc. administers the Plan. Martin Aff't, ¶¶ 3–5.

On or about August 10, 1990, Fox notified plaintiff of her right to continue medical and dental plan coverage under CO-

BRA.[1] On or about August 20, 1990, plaintiff did elect to continue coverage; plaintiff sent Fox a $299.43 check towards payment of the premium, entitling plaintiff to coverage through August 15, 1990. *Id.* at ¶¶ 6–8, Exh. B.

On or about September 14, 1990, Fox notified plaintiff that she had until October 4, 1990, to pay the next required premium and to bring her balance up to date. *Id.* at ¶ 9, Exh. C. Fox also advised that plaintiff's coverage would lapse if she failed to make timely payment. Plaintiff did not make payment as of October 4, 1990, and Phillips retroactively terminated her coverage as of August 16, 1990. *Id.* at ¶ 11. On October 9, 1990, plaintiff was admitted to the Bergan Pines County Hospital, where she remained for several months thereafter.

On January 16, 1991, the Hon. Arthur J. Lessemann of the Superior Court of New Jersey, Bergan County, Chancery Division, Probate Part adjudged plaintiff mentally incompetent and appointed Joseph Albies as plaintiff's legal guardian. Albies Aff't, ¶ 2, Exh. A. According to the separate evaluations of psychiatrists Stanley Waldinger, M.D., Morton Fridman, M.D., and Richard Winters, M.D., plaintiff has been unable to attend to her own affairs since August or early September of 1990. *Id.* at Exhs. B–D.[2] Based on several physical and psychological examinations, as well as a CT scan, Ms. Sirkin's three examining physicians concurred that Ms. Sirkin suffered from cerebral atrophy and memory impairment. She could not calculate dates or numerical equations, and she apparently forgot her second marriage and daughter. *See* Albies Aff't, Exh. C–D.

As a direct result of Ms. Sirkin's condition, Mr. Albies did not become aware of the October 4, 1990 due date for plaintiff's insurance premium until after plaintiff was admitted to the hospital on October 9, and he was not empowered to make the payment until his January 16, 1991 appointment as plaintiff's legal guardian. Albies Aff't, ¶¶ 6–10. However, Mr. Albies had initiated contact with Phillips as early as November 2, 1990 and had asked Phillips to reinstate plaintiff's COBRA coverage retroactively. Thus ensued a series of correspondence between Mr. Albies' lawyer and Phillips. *See* Albies Aff't, ¶ 17, Exh. F. On or about March 7, 1991, Mr. Albies tendered to Phillips a check for $1,952.02 as payment for the period in which plaintiff had failed to pay her health coverage premiums. Cplt. ¶ 15. The evidence suggests (and defendants do not dispute) that Mr. Albies responded promptly and expeditiously in his efforts to bring Ms. Sirkin's balance current.

Phillips has refused to accept the payment and to reinstate Plan coverage for plaintiff. Thus, plaintiff brings this action to recover benefits due and/or enforce the terms of the Plan.[3] Defendants counter that neither ERISA nor COBRA requires employers to accept late payments caused by mental incompetency of the plan participant.

At a July 2, 1991 scheduling conference, Magistrate Judge Hedges stayed all discovery and directed defendants to file dis-

---

1. Obligations of employers under COBRA, which are incorporated into ERISA at 29 U.S.C. §§ 1161–1168, include the requirement that employers allow qualified beneficiaries who would lose coverage to elect to continue coverage under the plan, 29 U.S.C. § 1161(a), usually for 18 months. 29 U.S.C. § 1162(2).

2. Judge Lessemann did not address plaintiff's onset date in his determination that as of January 16th plaintiff was incompetent. Defendants intend to dispute Ms. Sirkin's current mental incompetency and the alleged onset date if this action proceeds past this motion, but for purposes of this motion, the parties have agreed to assume Ms. Sirkin's incompetency. Def. Brief at 4, note 4.

3. As defendants point out at page 1, note 1 of their moving brief, plaintiff's action must be characterized either as one for recovery of benefits under 29 U.S.C. § 1132(a)(1)(B) or as one for "enforcement" of the "terms of [the] plan" under 29 U.S.C. § 1132(a)(3) and (f). Although these particular causes of action are not specified in the Complaint, plaintiff has not disputed this characterization by defendants in their briefs. Nor does plaintiff dispute application of the well recognized proposition that ERISA preempts all state law claims which "relate to" an employee benefit plan. 29 U.S.C. § 1144(a).

positive motions on the "duty of [a] former employer to pay COBRA premiums or excuse late payments." *See* Def. Brief at 2. Defendants have thus moved for summary judgment.

*Discussion*

This court can only grant summary judgment if there are no genuine issues of material fact and, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Wisniewski v. Johns–Manville,* 812 F.2d 81, 84 (3d Cir.1987).

The parties agree that this case presents a question of first impression: whether the mental incapacity of a participant in an ERISA plan excuses non-payment of required continuation coverage premiums, such that an employer, as plan sponsor, must accept late payments and retroactively reinstate the previously terminated COBRA coverage? *See* Def. Brief at 4; Plt. Brief at 5. Neither party has cited any case law or legislative history which would suggest that either Congress or the judiciary has addressed this question. Apparently because this question has yet to be addressed, defendants contend that the real issue is application of ERISA/COBRA's framework governing timing of payments for extending coverage. Since no exceptions which could apply to plaintiff are included within the statute,[4] defendants contend that plaintiff cannot ask this court to fashion such exceptions out of whole cloth. *See* Def. Brief at 8.

It is well established that while ERISA preempts all state law and causes of action, Congress intended that courts develop a body of federal substantive law designed to resolve questions of rights and obligations under private welfare and pension plans. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1987); *Plucinski v. I.A.M. Nat. Pen-*

*sion Fund,* 875 F.2d 1052 (3d Cir.1989); *Amato v. Bernard,* 618 F.2d 559, 567 (9th Cir.1980). "The inquiry is whether the judicial creation of a right in this instance is 'necessary to fill in interstitially or otherwise effectuate the statutory pattern enacted in the large by Congress.'" *Plucinski,* 875 F.2d at 1056 (quoting *Van Orman v. American Insurance Co.,* 680 F.2d 301, 312 (3d Cir.1982)).

▪ It is also well established that Congress enacted ERISA in order to insure "the continued well-being and security of millions of employees" by "establishing standards of conduct, responsibility and obligation for fiduciaries of employee benefit plans...." 29 U.S.C. § 1001(a)-(b). Thus, when courts are required to fill in the gaps of the statutory scheme, courts liberally construe ERISA in favor of protecting employee participants in benefit plans.

One principle of statutory construction teaches, of course, that remedial statutes are to be liberally construed to effectuate their purposes. There can be no doubt that ERISA, and in particular its provision for termination insurance under Title IV, is a remedial statute[.] Although the principle that remedial legislation is to be generously construed obviously "does not give the judiciary license, in interpreting a provision, to disregard entirely the plain meaning of the words used by Congress," the overwhelming evidence of the remedial purpose of ERISA must be given due weight in construing provisions whose language and specific legislative history are susceptible of varying interpretations.

*Rettig v. Pension Benefit Guaranty Corp.,* 744 F.2d 133, 155 n. 54 (D.C.Cir. 1984) (citations omitted). Thus, the court proceeds to analyze the issue presented in light of these two understandings: 1) the generous purpose of ERISA; and 2) the role of the judiciary in effectuating that purpose by developing a body of federal substantive law.

---

**4.** 29 U.S.C. § 1162(2)(C) does provide that a payment shall be considered "timely" if it is made within thirty (30) days of the date on which payment is due. The parties do not dispute that plaintiff tendered her late payment well beyond the thirty day grace period afforded by section 1162(2)(C).

Defendant insists that ERISA/COBRA specifically addresses the issue in this case—late payment—and therefore, the court cannot proceed to develop federal substantive law by carving out an excuse for late payments. The court does not agree. 29 U.S.C. § 1162(2)(C), on which defendants rely, merely provides:

> [C]overage ceases under the plan by reason of a failure to make timely payment of any premium required under the plan with respect to the qualified beneficiary. The payment of any premium (other than any payment referred to in the last sentence of paragraph (3)) shall be considered to be timely if made within 30 days after the date due or within such longer period as applies to or under the plan.

ERISA does not address circumstances where a beneficiary is incapacitated and unable to pay her monthly bills, let alone mentally unaware of her obligation to do so.

The court's opinion that COBRA does not specifically address the issue raised in this case is confirmed by recent amendments to the ERISA/COBRA provisions, which indicate Congress' concern with the restricted capabilities and special requirements of the disabled. As originally enacted, COBRA required plans to offer former employees extended coverage for a maximum of 18 months. 29 U.S.C. § 1162(2)(A)(i).[5] However, in 1989, Congress amended COBRA to include provisions extending maximum coverage to 29 months for any "individual who is determined, under title II or XVI of the Social Security Act to have been disabled at the time of a qualifying event[.]" 29 U.S.C. § 1162(2)(A) (last paragraph); Pub.L. 101–239, § 6703(a)(1). Simultaneous with that provision, Congress also added a new section extending coverage for those disabled persons described in section 2(A) until "the month that begins more than 30 days after the date of the final determination under title II or XVI of the Social Security Act that the qualified bene-

ficiary is no longer disabled." 29 U.S.C. § 1162(2)(E); Pub.L. 101–239, § 6703(a)(2). These latest amendments evidence Congress' emerging concern with the grave impact on the disabled of the loss of COBRA governed insurance plans.

In contrast to this emerging concern with the impact of COBRA on the disabled, defendants place some reliance on the proposed regulations drafted by the Treasury Department and intended to enforce the 1985 COBRA provisions. *See* Def. Brief at 7–8, citing 52 Fed.Reg. 22716 (1987) Proposed 26 C.F.R. § 1.162.26. These proposed regulations merely echo 29 U.S.C. § 1162(2)(C) and note that continued plan coverage can be terminated for failure to pay premiums. *Id.* at Q & A 38, 48. However, what defendants fail to point out is that the proposed regulations were drafted in 1987, prior to the 1989 statutory amendments. Moreover, adoption of the regulations is on hold by the agency, as the agency intends to revise the regulations consistent with the 1989 amendments. *See* 56 Fed.Reg. 53803–03 (1991).

Furthermore, of the approximately three dozen cases which have addressed COBRA to date, the only case of any relevance to the issue presented in this case has held that "[a]n election period of any duration is tolled during periods of incapacity which render a beneficiary incapable of making an election." *Branch v. G. Bernd Co.,* 764 F.Supp. 1527, 1540 (M.D.Ga.1991). In *Branch,* the beneficiary was shot shortly after he left his place of employment, and he remained in a coma until he died one month later. Prior to the shooting, the beneficiary had not yet elected whether to continue insurance coverage, and it was undisputed that he was unable to make that election while he was in the hospital until his death. One month after his death, plaintiff was appointed temporary administrator of the deceased's estate, and she immediately executed the COBRA election form and tendered a check to cover the

---

**5.** The statute extended that 18 month maximum to 36 months in certain circumstances, e.g., if the beneficiary claimed multiple qualifying events, bankruptcy, qualifying events not de-scribed in the statute, or entitlement to benefits under the Social Security Act. 29 U.S.C. § 1162(2)(A)(ii)–(v).

past premiums. However, the employer, as plan administrator, refused to accept the election of coverage, contending that administrix's election was untimely under the terms of the plan, which limited the election period to sixty (60) days.

The court held that plaintiff had two bases for recovery, one of which was that the election period could not be tolled during "periods of incapacity which render a beneficiary incapable of making an election," such that the election period did not toll until after the appointment of the administratrix. *Id.*[6] In *Branch* the defendant made the same contention as defendants in the case at hand, namely that COBRA specifically addressed the issue of election periods and that therefore, the court was not authorized to develop federal common law fleshing out exceptions in that regard. However, like this court, the *Branch* court held that the statute and the proposed regulation were not "the product of any serious contemplation of the circumstances" at issue in that case, and that defendant "reads into COBRA an inflexible policy against tolling the limitations period which the court is unable to find." *Id.* The *Branch* court arrived at this conclusion based on the general purposes and Congress' intent in enacting ERISA and COBRA: "that employees are unable to make valid decisions concerning benefits unless they are fully and truthfully informed with regard to these rights." *Id.* at 1542.

Like the beneficiary in *Branch*, given Ms. Sirkin's undisputed mental incapacity at the time of the October 4th due date for payment, it cannot be said that Ms. Sirkin was either fully informed of her rights or in a position to act on those rights. In light of ERISA's recognized remedial purpose, which this court must construe broadly, it is inconceivable to this court that a statutory scheme which is otherwise so generous and protective of employees enrolled in employment benefit plans would in this instance ignore both equity and reason by requiring employees suddenly incapacitated and physically unable to secure their benefits to forfeit so basic a need as health care coverage.

The holdings of *Branch* and this court reflect the longstanding principle that incompetents are afforded special treatment with regard to deadlines that affect their legal rights. In addition to the equities and logical reasoning which support plaintiff's claim, there is ample analogous precedent to support a mental disability exception for late payment such as the court fashions in this opinion. As plaintiff mentions, New Jersey law clearly recognizes and excuses the obligations of incompetents to abide by statutorily prescribed deadlines in their efforts to secure their rights. *See* N.J.S.A. 2A:14–1 *et seq.* (statute of limitations tolled differently as to incompetent persons); N.J.S.A. 59:8–8 (ninety day notice provision not tolled for incompetent persons); *Kleinke v. Ocean City*, 147 N.J.Super. 575, 371 A.2d 785 (App.Div.1977) (where plaintiff was in body cast for two months and made reasonable efforts to hire an attorney, plaintiff showed "sufficient reasons" under New Jersey statute to excuse late filing of notice of claim against municipality). Moreover, plaintiff correctly points out that the law routinely disregards the affirmative acts of mentally incompetent persons;[7] in order to be consistent, the law must likewise disregard, where appropriate, the inaction or default of mental incompetents.

As evidenced by decisions such as *Seabra v. Puritan Life Insurance Co.*, 117 R.I. 488, 369 A.2d 652 (1977), the equitable principles underlying such statutory enactments merely echo common logic and sense.[8] In *Seabra*, the Supreme Court of

---

**6.** The court also held as a separate basis for recovery that the plan did not clearly limit the election period to sixty days. The court made clear that this separate holding did not impact on its independent ruling regarding incapacity.

**7.** *See e.g. In re Estate of Bechtold*, 150 N.J.Super. 550, 376 A.2d 211, *aff'd*, 156 N.J.Super. 194, 383 A.2d 742 (Ch.Div.1977) (setting aside real estate conveyance by mentally incompetent person); 41 Am.Jur.2d Incompetent Persons § 69 (1968) (same).

**8.** The court recognizes that insurance contract law has been remarkably unforgiving of late premium payments on account of mental in-

Rhode Island held that mental incapacity or insanity can excuse an insured's failure to comply with the notice and proof requirements of the waiver of premium provision of the insured's policy. In that case, the named beneficiary of a life insurance policy sued to recover the policy's proceeds after the death of her husband. The policy had contained a "waiver of premiums" agreement, whereby the insured would be excused from paying his premiums if the insured supplied proof that he had become totally disabled along with his notice of claim. Under the policy at issue in the *Seabra* case, the insurer would forgive noncompliance with the timetable for the notice and proof upon a separate showing that the notice and proof were given as soon as reasonably possible. 117 R.I. at 491, 369 A.2d at 655. The deceased insured had not complied with either the notice and proof provision or the requirement that he demonstrate reasonable delay for their submission.[9]

Applying common-sense reasoning strikingly appropriate to the case at hand, the *Seabra* Court held that the insurance company must excuse the insured's failure to comply with these various requirements.

> To require a person who is described by some as being "insane" or "mentally incompetent" to do something that his disability prevents him from doing places that person in what some would refer to as a "catch-22" situation. Thus, it is that we agree with the proposition that it would be unreasonable to assume that an insane or mentally incompetent person could accurately assess the nature and degree of his ailment. *The insured is not bound to give notice of his disability when he is unable to do so by reason of the very disability insured against.* [W]hile the furnishing of due proof of disability is a condition precedent to the insurer's obligation to waive premiums, it was not the event insured against, and since the inability to furnish proof grew out of the risk insured against, denial of recovery would be tantamount to a forfeiture.

117 R.I. at 493, 369 A.2d at 656 (emphasis added) (citations omitted).[10] Similarly, Ms. Sirkin's inability to mail the insurance premium is not the event insured against, whereas Ms. Sirkin's mental incapacity was the event insured against. Ms. Sirkin was in the very state of mental disability which impaired her ability to know that a payment was required.

■ Based on the purposes of ERISA, the role of this court in effectuating those purposes, Congress' recent attempts to incorporate the concerns of the disabled into COBRA, and the scant but unanimous case law addressing the appropriate legal, equitable, and logical outcome of analogous situations where disability prevents actions or knowledge of obligations, the court

---

competency, although much of the concern in that body of law relates to disabilities giving rise to economic hardship, as opposed to actual physical or mental incompetency. *See generally* 45 C.J.S. Insurance § 621. However, notwithstanding the general direction of insurance law based on strict contract principles, the court finds the reasoning of the *Seabra* case particularly relevant to the issue presented in the case at hand.

**9.** This "premium-waiver" portion of the policy and its provision for "reasonable delay" of the notice and proof requirements is not a basis for distinguishing *Seabra* from the case at hand. Ms. Sirkin's policy does not contain any excuse for reasonable delay of payment or a premium waiver provision. However, as discussed *infra*, the principle and rationale of *Seabra* is that a mental incompetent cannot be held accountable to the various payment, notice, and timetable requirements of a policy where the insured's mental incapacity is the very reason that the insured cannot comply with the terms of the policy. In *Seabra*, even though the insured's policy contained premium-waiver and reasonable delay provisions, the policy still required the insured to make a showing that the notice and proof were given "as soon as reasonably possible." Thus, the policy in *Seabra* still required affirmative steps of the insured which, in this case, the insured was mentally and physically incapable of taking.

**10.** *See also Guthrie v. Northwestern Mutual Life Ins. Co.,* 158 W.Va. 1, 208 S.E.2d 60, 63 (1974) (failure to comply with notice provision of policy may be excused by insured's physical inability to comply); 45 C.J.S. Insurance § 621, p. 469 ("The impossibility of furnishing timely proof under the circumstances of the case may, in some jurisdictions, constitute an excuse for delay"); *id.* at 470 ("in a number of other jurisdictions physical or mental incapacity will excuse a default in the time of furnishing proof").

holds that where an insured misses a premium deadline under COBRA due to the insured's incapacity to know of or meet her obligation, the deadline for that premium payment is tolled for a reasonable period of time until the insured or her legally appointed guardian is able to cure the deficiency.[11]

Applying that rule to the facts of the case at hand, there is no dispute on this motion that Ms. Sirkin evidenced an intention to continue coverage when she made the first payment but became incapacitated prior to the October 4th deadline for the next payment. There is also no dispute that Ms. Sirkin remained incompetent until at least January 16, 1991, when Mr. Albies was appointed her legal guardian. Nor do defendants dispute that Mr. Albies promptly attempted to bring Ms. Sirkin's balance current. Therefore, the court holds that in this admitted factual posture, as a matter of law, defendants must accept Mr. Albies' offer of payment and reinstate Ms. Sirkin's insurance coverage retroactive to the date of termination.

*Conclusion*

For the foregoing reasons, defendants' motion to dismiss the Complaint is denied.[12]

---

**11.** The court recognizes that uncertainty as to whether a lapsed policy might be revived in the future affects actuarial predictions. However, the incidence of such total disability is so rare that the impact upon such predictions is minimal.

**12.** Defendants also argue, in a footnote, that the Complaint must be dismissed because plaintiff has failed to exhaust her administrative remedies. That issue is beyond the scope of the motions which the Magistrate directed the parties to file, and will not be resolved at this juncture.