Defendant's judgment of conviction is reversed.

768 A.2d 254

HACKENSACK UNIVERSITY MEDICAL CENTER, F/K/A HACKEN-SACK MEDICAL CENTER, PLAINTIFF v. JOSEPHINE ROSSI, DEFENDANT–THIRD–PARTY PLAINTIFF v. GREYSTONE PARK PSYCHIATRIC HOSPITAL, ST. MARY'S HOSPITAL AND PRISCILLA ILEM, M.D., THIRD–PARTY DEFENDANTS

Superior Court of New Jersey
Law Division Passaic County

Decided: July 13, 1998—Opinion corrected July 15, 1998.

---

[2] In listening to the tape, we heard nothing that would support a contempt charge for improper contact. Defendant sounded annoyed, frustrated and impatient, but neither his tone nor the content of his remarks could be considered threatening or abusive. The parties were quarreling, mostly by leaving messages, over their son's visitation with his father. Neither the subject matter nor its form of presentation warranted a contempt charge. *See State v. Wilmouth,* 302 *N.J.Super.* 20, 23, 694 *A.2d* 584 (App.Div.1997) ("There are too many substantial and significant domestic violence matters requiring the urgent attention of the court system to squander judicial and prosecutorial resources on patently unmeritorious litigation which, moreover, unfairly subjects people to criminal penalties.")

140

*Massood & Covello,* for Defendant/Third–Party Plaintiff (*Joseph A. Massood* and *Frank Covello,* Attorneys appearing, and *Mr. Massood* and *Mr. Covello* on the briefs).

*Peter G. Verniero*, Attorney General for the State of New Jersey for Third–Party Defendants (*Jane F. Slowinski*, Deputy Attorney General, appearing and on the brief).

DE LUCCIA, J.S.C.

This matter is before the court by way of motions and cross motions for reconsideration filed by defendant-third-party plaintiff and third-party defendants. The Attorney General, on behalf of the third-party defendant, Greystone Park Psychiatric Hospital (Greystone) seeks reconsideration of an order entered March 27, 1998 by a judge, now retired, which granted the third-party plaintiff, Josephine Rossi (Rossi) leave to file a late notice of tort claim as to Greystone, I.M. Siddiqui, M.D. and Teoman Koc, M.D., individual defendants who are public employees. The order also provided that a prior filing of a late notice of claim against Greystone and its employees be deemed filed and received in accordance with *N.J.S.A.* 59:8–8. Finally, the order granted Rossi permission to immediately file a separate lawsuit against Greystone and its employees, by deeming the mandatory six month waiting period, as required by *N.J.S.A.* 59:8–8, to have been satisfied.

Rossi seeks reconsideration of prior orders which resulted in the dismissal of Rossi's third-party complaint against Greystone and its employees for her failure to file a timely notice of tort claim. Rossi seeks to have prior notices deemed timely filed and to restore her third-party complaint to the trial calendar.

In order to place the court's decision in the appropriate context, a factual narrative is required. On or about June 10, 1993, Rossi appeared before the Family Part as a defendant in a domestic violence complaint filed by her former husband. Apparently as a consequence of her demeanor and deportment, the Family Part judge questioned Rossi's competency and appointed Joseph Massood, Esq. to represent her in respect of the domestic violence proceeding. Thereafter, on or about June 18, 1993, Rossi was admitted to Hackensack Medical Center (Hackensack). She now

alleges that during her confinement at Hackensack, she was subjected to medical malpractice. Subsequently, on about July 19, 1993, Rossi was transferred from Hackensack to Greystone. Although the record is not clear, it appears that Rossi's commitment to Greystone was pursuant to *N.J.S.A.* 30:4–27.

On June 25, 1993, Rossi's husband filed a complaint for divorce. On July 27, 1993, the same Family Part Judge appointed Gail Mitchell, Esq. as Rossi's Guardian ad Litem in respect of the dissolution action. Subsequently, in or about April, 1994 a complaint pursuant to *Rule* 4:86 and *N.J.S.A.* 3B:12–24 was filed in Morris County seeking an adjudication of Rossi as an incompetent and the appointment of a guardian. On or about August 22, 1994, the Morris County Assignment Judge declared Rossi incompetent and appointed Gail Mitchell, Esq. as her guardian. Throughout this period of time, Rossi remained involuntarily committed at Greystone, diagnosed as suffering from Bi Polar I disorder.

Rossi alleges that during her confinement at Greystone, medical personnel improperly administered medication which caused her to suffer an adverse reaction. She contends that as a consequence of the alleged malpractice, her condition deteriorated. She further alleges that the malpractice continued until May, 1995. At that time Greystone altered her medication, which resulted in an amelioration of her psychotic condition.

Between May, 1995 and February, 1996, Rossi's condition apparently continued to improve. Finally on or about February 26, 1996, Rossi's condition was in a sufficient state of remission to permit her release from Greystone to her home and out-patient care. By that date, Rossi apparently no longer met the statutory requirement of presenting a danger to herself or others sufficient to justify her continued involuntary commitment.

In the latter part of March, 1996, Rossi was served with a summons and complaint by Hackensack, seeking payment for unpaid medical services rendered during Rossi's confinement at that institution. Rossi claims that when she consulted with her attorney about the lawsuit, she first began to articulate "in a

limited way" the circumstances surrounding her confinement and treatment at Greystone. This is alleged to have occurred on or about April 5, 1996.

On April 24, 1996, Rossi, through her attorney, filed an answer to Hackensack's complaint and a third-party complaint against Greystone and its employees. A copy of Rossi's third-party complaint was served on Greystone on May 30, 1996. On June 28, 1996, a copy of the third-party complaint, together with a "tort claim notice", was delivered to the State of New Jersey. Thereafter, in response to a request from the Attorney General, an additional "tort claim notice" was served on the Attorney General on March 21, 1997. On September 30, 1997, the Attorney General in writing acknowledged Rossi's claim and requested her attorney to complete an additional tort claims form provided by the Attorney General's Office. The completed form was sent to the Attorney General on or about October 13, 1997.

On June 27, 1997, the Morris County Assignment Judge, in response to Rossi's application, entered an order pursuant to *N.J.S.A.* 3B:12–28 restoring Rossi to competency and discharging her guardian. Thereafter, in August, 1997, Greystone filed a motion for summary judgment seeking dismissal of Rossi's third-party complaint for failure to comply with the provisions of the Tort Claims Act. On October 10, 1997, the court heard argument on the motion, and thereafter entered an order dismissing Rossi's third-party complaint without prejudice.

It is conceded that Greystone is a public entity within the definition found in *N.J.S.A.* 59:1–3. Accordingly, any litigation commenced against Greystone is covered by the notice provisions of the Tort Claims Act, *N.J.S.A.* 59:8–1, *et seq.* A claimant must, within ninety days of the accrual of a cause of action, file a notice of claim with the public entity. *N.J.S.A.* 59:8–8. Furthermore, the Act prohibits a claimant from instituting litigation against the public entity until the expiration of six months from the date the notice of claim is received. *Ibid.*

In the present matter, it is undisputed that Rossi did not comply with the notice provisions of the Tort Claims Act prior to the filing of her third-party complaint on April 26, 1996. The filing of the third-party complaint, together with a purported notice of claim, is not a substitute for the notice required by the statute. *See Guzman v. City of Perth Amboy,* 214 *N.J.Super.* 167, 172, 518 *A.2d* 758 (App.Div.1986). *See also Martin v. Tp. of Rochelle Park,* 144 *N.J.Super.* 216, 221, 365 *A.2d* 197 (App.Div. 1976).

■ Furthermore, the third-party complaint filed in this matter purports to assert a *direct* claim against Greystone rather than a claim for contribution or indemnification. The litigation commenced by Hackensack is essentially an action on a book account. Rossi's third-party complaint, however, alleges medical malpractice. While consideration of the entire controversy doctrine may have compelled Rossi to implead Greystone by way of third-party complaint, the nature of her allegations against that entity remove this case from the exemptions to the notice requirement as found by the courts in *Perello v. Woods,* 197 *N.J.Super.* 539, 485 *A.2d* 350 (Law Div.1984) and *Berretta v. Cannon,* 219 *N.J.Super.* 147, 529 *A.2d* 1070 (Law Div.1987). Accordingly, Rossi's motion seeking reconsideration of the order dismissing her third-party complaint, without prejudice, and directing the institution of a separate complaint against Greystone and its employees is denied. *See Lameiro v. West New York Bd. of Ed.,* 136 *N.J.Super.* 585, 588, 347 *A.2d* 377 (Law Div.1975).

Greystone urges this court to reconsider a prior ruling permitting Rossi to file a late notice of claim and deeming prior notices actually filed by Rossi as complying with the late notice requirements of the Tort Claims Act. In his brief, the Attorney General argues that the court erred by applying the wrong legal standard and the court was "blind" to facts alleged to be relevant to the issue of Rossi's competency. The Attorney General further argues that the issue of whether Rossi's incompetency tolled the

notice requirements under *N.J.S.A.* 59:8-8 was properly the subject of a hearing.

The time requirements contained in *N.J.S.A.* 59:8-8 for the presentation of claims are tolled for infants and incompetent persons during the period of their minority or disability. The statute provides that "nothing in this section shall prohibit an infant or incompetent person from commencing an action under this Act within the time limitations contained herein, after his coming to or being of full age or sane mind." *N.J.S.A.* 59:8-8. Unfortunately, the legislature failed to provide a definition of the phrase, "sane mind".

Rossi suggests that the phrase "sane mind" is the functional equivalent of competency. Rossi argues that her commitment to Greystone pursuant *N.J.S.A.* 30:4-27 as well as the subsequent determination of her mental incompetency and appointment of a guardian pursuant to *N.J.S.A.* 3B:12-24 constitute findings of fact that bind this court in respect of collateral considerations of her mental state. Rossi further contends that since the order restoring her to competency and discharging the guardian was not entered until June 27, 1997, she continued to labor under this infirmity and all obligations to comply with the notice provisions of the Tort Claims Act were tolled until that date. Rossi maintains that the ninety day period for filing notices of claim only commenced to run from and after the date of order, i.e., June 27, 1997. Rossi reasons that since several notices of claim were sent to Greystone as well as the Attorney General's Office prior to June 27, 1997, the notice of claim provision contemplated by the Act has been satisfied.

There are no reported decisions construing the section of the Tort Claims Act tolling the time limitations for the filing of notices of claim by incompetent persons. There are, however, numerous cases which have interpreted this section of the statute in respect of minors and parental derivative claims. These cases have held that the time within which a child must give notice of claim to a public entity is tolled until the child reaches majority. The cases

also have held that a parent has the same period of time as an injured child in which to file a notice of claim for consequential damages. *Hill v. Middletown Bd. of Ed.*, 183 *N.J.Super.* 36, 39, 443 *A.2d* 225 (App.Div.1982); *Rost v. Bd. of Ed. of Fair Lawn*, 137 *N.J.Super.* 79, 347 *A.2d* 811 (App.Div.1975); *Vedutis v. Tesi*, 135 *N.J.Super.* 337, 346, 343 *A.2d* 171 (Law Div.1975), aff'd *o.b.*, 142 *N.J.Super.*, 492, 362 *A.2d* 51 (App.Div.1976).

■ In support of the claim that Rossi remained under the umbrella of protection afforded by the tolling provisions contained in *N.J.S.A.* 59:8-8 until the entry of the order on June 27, 1997 returning her to competency, counsel urges the court to accept its analogy to the laws of incompetency as applied to testamentary capacity. In this regard, Rossi relies upon the holdings in the *Matter of Estate of Frisch*, 250 *N.J.Super.* 438, 594 *A.2d* 1367 (Law Div.1991) and *In re Estate of Bechtold*, 150 *N.J.Super.* 550, 376 *A.2d* 211 (Ch.Div.1977), *aff'd* 156 *N.J.Super.* 194, 383 *A.2d* 742 (App.Div.1978), *certif. den.* 77 *N.J.* 468, 391 *A.2d* 484 (1978). These cases are cited to stand for the proposition that until there is a judicial adjudication of a return to competency, an individual previously declared incompetent may not execute a valid will. Superficially, these cases appear to support Rossi's arguments. However, upon closer scrutiny, they are revealed to be distinguishable.

In *Frisch*, the Law Division considered the implications of *N.J.S.A.* 3B:12-27 on the ability of a person adjudicated incompetent to execute a valid will. The pertinent part of that statute reads:

> If a mental incompetent dies intestate or without any will except one which was executed after commencement of proceedings which ultimately resulted in a judgment of incompetency and before a judgment has been entered adjudicating a return to competency, his property shall descend and be distributed as in the case of intestacy. [*N.J.S.A.* 3B:12-27]

The court questioned whether this statute conclusively precluded an adjudicated incompetent from executing a valid will until an adjudication of competency or whether the statute merely set up a rebuttal presumption of incompetency. However, the court avoid-

ed reaching that determination by finding that the incompetent had been returned to competency. The court, nonetheless, did conclude that there is a distinction between the test for "testamentary capacity" and the test for "mental incompetency." The court found that the test for testamentary capacity in New Jersey "has a relatively low threshold," while the test for mental incompetency "is somewhat more demanding." *Id.* at 447–448, 594 *A.*2d 1367. *In Frisch,* the court relied upon *N.J.S.A.* 3B:1–2 for a definition of mental incompetency:

"Mental incompetent" means a person who is impaired by reason of mental illness or mental deficiency to the extent that he lacks sufficient capacity to govern himself and manage his affairs.

Based upon this conclusion, Rossi argues that if a mental incompetent is unable to meet the low threshold for testamentary capacity without first being judicially restored to competency, then it must follow that Rossi could not meet the higher standard of mental competency as required by the Tort Claims Act to invoke the notice requirements.

However, Rossi misreads the holding in *Frisch.* In *Frisch,* the court specifically found that a statute (*N.J.S.A.* 3B:12–27) and prior decisional law (*Bechtold* ) required a judicial determination of competency before an adjudicated incompetent could execute a valid will. However, in respect of the Tort Claims Act, there is no analogous provision to *N.J.S.A.* 3B:12–27.

The result reached by the courts in *In Re Estate of Bechtold, supra,* is even less supportive of Rossi's position. In *Bechtold,* the Chancery Division considered the impact of *N.J.S.A.* 3A:6–39 upon a will executed after the decedent was declared incompetent. The language of *N.J.S.A.* 3A:6–39 is virtually identical to that found in *N.J.S.A.* 3B:12–27. In *Bechtold,* the court concluded that "(t)he Legislature has thereby established a cutoff point after which any litigation as to a deceased incompetent testamentary capacity is barred." *Id.* at 555, 376 *A.*2d 211. Accordingly, the court found that the will of a decedent executed after a judicial adjudication of incompetency was, as a consequence of the statute, conclusively invalid. The court concluded *N.J.S.A.* 3A:6–39 prohibited post

mortem proceedings designed to return the decedent to competency. *Ibid.*

Thus, it is clear that the results reached in *Frisch* and *Bechtold* are predicated upon specific legislative enactments in respect of testamentary capacity which are neither parallel nor analogous to any provisions of the Tort Claims Act.

Rossi also relies upon Chancery Division opinion in the *Matter of D.K.*, 204 *N.J.Super.* 205, 497 *A.*2d 1298 (Ch.Div.1985). In *D.K.*, the court considered the impact of the release of an alleged incompetent from Ancora State Hospital on the issue of whether the individual should be adjudicated incompetent. The court found that the release of the individual from an involuntary commitment at Ancora did not affect the issue of competency. The court noted the distinction between the test to be satisfied in order to justify an involuntary commitment (i.e., the likelihood that an alleged incompetent person poses a danger to herself or others or to property by reasons of mental illness) as opposed to the test for a declaration of incompetency (whether the alleged incompetent is unfit and unable to govern himself or herself and to manage his or her affairs.) *Id.* at 226–227, 497 *A.*2d 1298. The court also noted that in the case before it, the alleged incompetent's release from Ancora occurred after the hearing held on the issues of her competency. *Ibid.*

This court does not dispute or quarrel with the holding in *D.K.* However, *D.K.* does not resolve the issue presented here which is whether the time to file a notice of claim under the Tort Claims Act is tolled until a person adjudicated incompetent is returned to competency by a judicial decision. This court is satisfied that Rossi's discharge from Greystone in February, 1996, is not conclusive evidence that she was restored to competency as of that date. It is only conclusive evidence as to whether she represented a danger to herself or others, in the context of an involuntary commitment pursuant to *N.J.S.A.* 30:4–27. It may, however, be evidence from which a court could conclude that she

had been restored to competency prior to the order of June 27, 1997.

As previously noted, there are no reported decisions in this state dealing with this precise issue. However, there are a number of cases addressing the issue of the effect of a judicial adjudication of incompetency in the context of contract law. In *Swift & Company v. Smigel*, 115 *N.J.Super.* 391, 279 *A.2d* 895 (App.Div.1971), the Appellate Division held that an adjudication of mental incompetency of a guarantor subsequent to the execution of a guarantee did not operate to revoke the continuing guarantee unless the seller knew or reasonably should have known of the guarantor's incompetence at the time of the subject sales. Furthermore, the Appellate Division ruled that even if it had been established that the claimant knew of the guarantor's declaration of incompetency, the issue of whether the guarantor was actually incompetent, was not conclusively resolved. The court held "(t)he decisions in this State leave no doubt that that fact is not conclusive but only *prima facie* evidence of legal incompetency." *Id.* at 400, 279 *A.2d* 895.

In the *Borough of East Paterson v. Karkus*, 136 *N.J.Eq.*, 286, 41 *A.2d* 332 (Ch.1945), our former Chancery Court was presented with a petition by the wife of the defendant seeking to be appointed as a guardian ad litem to represent the defendant's interests in pending litigation. In support of her application, defendant's wife presented evidence that defendant had been declared an incompetent veteran incapable of managing his affairs by the Orphans Court of Middlesex County and that she had been appointed guardian to receive monies payable to him by the Veterans Administration.

The plaintiff opposed the petition and presented proofs that the defendant was actually engaged in the practice of law. Plaintiff asserted that defendant's mind was neither so enfeebled nor disordered as to warrant the appointment of a guardian to represent him in the pending proceedings. In considering this issue, the court noted that

(a)n adjudication by a court vested with appropriate jurisdiction establishing the insanity of a person is competent evidence of the mental condition of the person at the time when the judgment was rendered. (Citations omitted). Moreover, it conveys with it a presumption of the continued existence of that condition. (Citations omitted). However, neither the judgment nor the presumption is conclusive. *Id.* at 290, 41 *A.*2d 332.

*See also Coombs v. Witte,* 104 *N.J.L.* 519, 523, 140 *A.* 408 (E. & A.1928) (holding that judicial determinations of incompetency are not only evidential on the question of the person's mental condition at the time when they were handed down, but also of the continued existence of that condition; where a state of insanity is shown to have existed at a certain time, it is presumed to continue until the contrary is shown.) *And see Eckman v. Wood,* 108 *N.J.L.* 105, 108, 154 *A.* 862 (E. & A.1931). (Adjudication of incompetency is merely *prima facie* proof of disqualification, open and subject to rebuttal.)

 These decisions persuade this court to conclude, that in the absence of a specific statutory enactment, an adjudicated incompetent may be relieved of some of the disabilities attendant to that status, prior to a formal judicial declaration restoring competency. The order of August 22, 1994 adjudicating Rossi incompetent and appointing a guardian is competent, but not conclusive evidence of Rossi's disability resulting from her psychiatric condition. Similarly, the subsequent order of June 27, 1997 discharging the guardian is equally competent evidence that her incompetency continued through at least June 27, 1997. However, the order restoring Rossi to competency and discharging the guardian is not conclusive evidence of the fact that she remained incapacitated until that date. It may be challenged collaterally in these proceedings.

There are compelling reasons why the guardianship proceedings in Morris County do not preclude an inquiry here as to when Rossi actually resumed competency. First, the focus of the proceedings in Morris County was on whether Rossi was competent *at the time of the hearing,* so as to permit the termination of the guardianship. The court did not, and need not have, focused on whether her competency was restored at an earlier date.

Second, the application was initiated by Rossi, and thus it was she who determined when the issue was to be presented to the court. Accordingly, she may have had ulterior motives in delaying the application, in order to preserve her status in the present litigation. Finally, the state was not a party to the Morris County proceedings, and did not have a fair opportunity to litigate the issue of the date of her restoration to competency in the context of her ability to file a tort claims notice. *See Allesandra v. Gross,* 187 *N.J.Super.* 96, 103, 453 *A.*2d 904 (App.Div.1982).

In this case there is before the court evidence indicating that subsequent to her discharge from Greystone in February, 1996, Rossi was able to maintain herself unassisted in her residence, establish a checking account, hold a valid driver's license and report daily to an out-patient clinic for medication. Furthermore, Rossi was apparently sufficiently lucid to sign an extensive certification in connection with dissolution proceedings pending in the Family Part. This certification was signed April 1, 1996. Rossi argues that these facts do not establish her return to competency prior to the order of June 27, 1997. Perhaps this is true. However, these facts do raise a legitimate inference that Rossi was lucid and rational, aware of attendant circumstances relative to her legal rights and liabilities and capable of making informed decisions in the management of her affairs before her guardianship was terminated.

It seems incongruous that a person adjudicated incompetent could nonetheless be held liable for contractual obligations upon proof of actual competency, prior to a formal adjudication, while simultaneously being relieved of responsibility to file a notice of claim until ninety days after a judicial restoration of competency. Accordingly, this court holds that for the purposes of tolling of the notice requirements in *N.J.S.A.* 59:8–8, Rossi shall be relieved from the requirements imposed therein only during such time that she is actually found to have been lacking sufficient capacity to govern herself and manage her affairs as a consequence of her mental illness. Evidence of her adjudication of incompetency

under *Rule* 4:86–1 is merely proof of, but not conclusive evidence of her disability. This court finds that the order terminating her guardianship is only evidence of the fact that she was competent as of June 27, 1997, and does not conclusively determine whether she had resumed competency prior to that date.

■ Greystone also argues that any period in which Rossi's compliance with the notice requirements of the Tort Claims Act was tolled, ended upon the appointment of the guardian. In this case, the guardian of Rossi's person and property was appointed August 22, 1994. According to Greystone, notice of tort claim should have been filed within ninety days thereafter. Greystone also maintains that a motion seeking leave to file a late notice of claim should have been filed not later than August 21, 1995.

In support of its position, Greystone relies upon *Kyle v. Green Acres at Verona, Inc.,* 44 *N.J.* 100, 207 *A.*2d 513 (1965). In *Kyle,* the plaintiff instituted a suit in 1962 for injuries sustained in a fall which occurred on January 21, 1957. On October 13, 1957, plaintiff was officially committed to a hospital as "insane". She was thereafter officially discharged from that hospital in March, 1962. Her complaint was subsequently filed in May, 1962. In its ruling, the Supreme Court determined that *N.J.S.A.* 2A:14–21, which tolls causes of action during a person's insanity, did not apply because plaintiff's "insanity" occurred after her cause of action had accrued. However, the Court declined to bar plaintiff's cause of action because defendant's wrongful conduct caused Kyle's disability. The Court reasoned that in such cases an equitable approach should be employed. The Court determined that the trial court should conduct a hearing without a jury to determine whether the insanity developed on or subsequent to the date of the alleged act of the defendant and within the period of limitation, and if so, whether that insanity resulted from the defendant's conduct. The trial court should also consider whether plaintiff's suit was commenced within a reasonable time after the restoration of sanity or after the appointment of a guardian who

knew or should have known of the cause of action. *Id.* at 12, 207 *A.2d* 513.

The holding of *Kyle* however, was recently clarified by the Appellate Division in *Unkert v. General Motors,* 301 *N.J.Super.* 583, 694 *A.2d* 306 (App.Div.1997). In *Unkert,* the plaintiff was rendered disabled and incompetent on October 25, 1988 as a result of an automobile accident. In March, 1989, a guardian was appointed for the plaintiff. However, it was not until January 7, 1993, that the guardian instituted an action against the defendant, General Motors, alleging a product defect as a cause of plaintiff's injuries. In *Unkert,* the Appellate Division distinguished the Supreme Court's ruling in *Kyle* on the grounds that Unkert's mental disability occurred contemporaneously with the accrual of the cause of action. The Appellate Division concluded that *Kyle* was factually distinguishable and that the Supreme Court's ruling "was constructed outside [*N.J.S.A.* 2A:14–21], which the Court had determined to be inapplicable." *Id.* at 591, 694 *A.2d* 306. The Appellate Division also concluded that nothing in *N.J.S.A.* 2A:14– 21 compelled a conclusion that the appointment of a guardian triggered the running of the statute of limitations. *Id.* at 592–593, 694 *A.2d* 306. Consequently, plaintiff's claim for damages against General Motors was deemed immune from a statute of limitations defense. *Id.* at 593, 694 *A.2d* 306.

The rationale of the holding in *Unkert* is found to be applicable to the facts of this case. Neither the Legislature nor the courts have created any obligation on the part of the parent or guardian to file a tort claim notice on behalf of a minor. The notice requirements of the Tort Claims Act are tolled during a child's minority as are parental derivative claims. *See Rost v. Bd. of Ed. of Fair Lawn, supra; Vedutis v. Tesi, supra; Hill v. Middletown Bd. of Ed., supra.* Moreover, nowhere in *N.J.S.A.* 3B:12–57 is there an enumerated power which either compels a guardian to file a lawsuit for personal injuries on behalf of a ward or obligates the guardian to file any notice of tort claim.

■ In construing the statute, it is to be assumed that the Legislature intended a reasonable approach and statutes should be construed to reach that result. *Unkert, supra,* 301 *N.J.Super.* at 592, 694 *A.2d* 306. This court is persuaded that to construe *N.J.S.A.* 59:8–8 in such a fashion which would eliminate the tolling provisions for an incompetent person upon the appointment of a guardian but not for minors, is unreasonable. Accordingly, this court holds that the tolling provisions of *N.J.S.A.* 59:8–8 are not terminated upon the appointment of a guardian for an incompetent person.

Therefore, the motion of third-party defendant, Greystone Park Psychiatric Hospital, on reconsideration is granted. The order of March 27, 1998 permitting defendant third-party plaintiff to file a late notice of tort claim and deeming the late notice of claim timely filed, is vacated. The matter will be set down for plenary hearing to determine the actual date upon which Rossi became competent. The issue of whether Rossi shall be permitted to file a late notice of claim shall abide the results of that hearing.