750 A.2d 790

I/M/O ABSENTEE BALLOTS CAST BY FIVE RESIDENTS
OF TRENTON PSYCHIATRIC HOSPITAL.

Superior Court of New Jersey
Appellate Division

Argued December 6, 1999—Decided May 15, 2000.

Before Judges KEEFE, A.A. RODRÍGUEZ and LINTNER.

*S. Paul Prior* argued the cause for appellant New Jersey Protection and Advocacy, Inc., on behalf of F.H.B., G.W.B., J.G., R.B. and M.M.

*Kevin H. Main* argued the cause for respondent Mercer County Republican Party (*Spadaccini, Main & Sheridan,* attorneys; *Mr. Main* on the brief).

*Donna Kelly,* Senior Deputy Attorney General, argued the cause for respondent Attorney General (*John J. Farmer, Jr.,* Attorney General; *Mary C. Jacobson,* Assistant Attorney General, of counsel; *Ms. Kelly,* on the brief).

The opinion of the court was delivered by

RODRÍGUEZ, A.A., J.A.D.

■    In this appeal, we hold that voters who are involuntarily committed residents of a psychiatric hospital pursuant to *N.J.S.A.* 30:4–24 to –80 are presumed competent·to vote. Therefore, they cannot be challenged as voters nor their ballots segregated, absent a particularized showing of incompetence.

On November 3, 1998, a general election day, the attorney for the Mercer County Republican Committee wrote a letter to the Mercer County Board of Elections (Board) challenging any absentee ballot cast by residents of Trenton Psychiatric Hospital. The attorney asserted that he had became aware that "there was an organized effort to register voters that have been committed by a judge to Trenton Psychiatric Hospital." The attorney for the Mercer County Democratic Committee joined the challenge. Seven absentee ballots were identified as being cast by residents of the hospital. The Attorney General advised the Board that, absent an adjudication of insanity or other documentary evidence of insanity or incompetency, the ballots should be counted. The Board rejected two of the ballots on grounds other than competency. However, the Board was deadlocked regarding the remaining five absentee ballots.[1] The Board referred the challenge of these ballots to the Law Division.

In the Law Division, there was a hearing at which attorneys for both political committees and New Jersey Protection and Advocacy, Inc. (NJPA) participated. The Attorney General appeared, but did not represent the Board because the Board was evenly divided. No evidence as to the competency of the individual voters was presented.

The judge decided that the ballots should remain unopened and segregated. The judge reasoned that the "safe approach" was to segregate the ballots now, and only allow the ballots to be opened if the voter was later determined competent. The ballots were

---

[1] These ballots were cast by F.H.B., G.W.B., J.G., R.B. and M.M.

ordered returned to the Board office and placed under lock. The following day, the judge ordered that the ballots remain segregated until further order of the court.

NJAP appeals on behalf of the five voters. The Attorney General moved to intervene and we granted that application.[2] The Mercer County Democratic Committee did not file an appellate brief. On appeal, NJAP contended that: (1) a challenge based on residency at the psychiatric hospital alone is illegal; (2) the voters were deprived of their fundamental right to vote because their ballots were segregated; and (3) the judge erred by not placing the burden on the challengers to show by clear and convincing evidence that the voters were ineligible to vote. We agree with all three contentions.

The first contention is that a showing that a voter resides at a psychiatric hospital by itself is insufficient to sustain a challenge to the right to vote. We agree. A review of authorities regarding the right to vote, the procedure for challenging a voter and the civil rights of voters receiving treatment for mental illness, is helpful. The New Jersey Constitution sets forth the qualifications for being a voter. A voter must be a United States citizen, eighteen years old or older, and satisfy a thirty-day State or County residency requirement. *N.J. Const.* Art. 2, § 1, ¶ 3. However, "[n]o idiots or insane person shall enjoy the right of suffrage." *Id.* at Art. 2, § 1, ¶ 6. This prohibition is also reflected in *N.J.S.A.* 19:4-1, which provides that "[n]o person shall have the right to suffrage—(1) Who is an idiot or insane." However, there is no statutory definition of the terms "idiot" or "insane."

Generally, a voter may be subject to a challenge of his or her right to vote. *N.J.S.A.* 19:7-5. Nonetheless, there are specific limitations on the powers of challengers in order to effectuate the overriding public policy in favor of enfranchisement. *See*

---

2 *I/M/O Absentee Ballots Cast By Residents of Trenton Psychiatric Hospital,* No. M-4028-98 (App.Div. March 19, 1999).

*Afran v. County of Somerset,* 244 *N.J.Super.* 229, 232, 581 *A.*2d 1359 (App.Div.1990) (citing cases that demonstrate New Jersey's jurisprudential commitment to liberal construction of election laws). Such policy derives from the basic precept that the right to vote is quintessential to our democratic process. *Gangemi v. Berry,* 25 *N.J.* 1, 12, 134 *A.*2d 1 (1957). It follows, then, that all challenges to an individual's right to vote be carefully scrutinized.

New Jersey's commitment statute sets forth the framework for involuntary commitment of mentally-ill, and mentally retarded persons to state institutions designed for their care. However, the legislature specifically guaranteed that the right of suffrage not be deprived to an individual receiving treatment in psychiatric hospitals. Specifically, *N.J.S.A.* 30:4–24.2a provides:

> Subject to any provisions of law and the Constitution of New Jersey and the United States, no patient shall be deprived of any civil right solely by reason of his receiving treatment under the provisions of this Title nor shall such treatment modify or vary any legal or civil right of any such patient including but not limited to the right to register and to vote at elections....
>
> [*N.J.S.A.* 30:4–24.2a]

Moreover, *N.J.S.A.* 30:4–24.2c provides in part that "[n]o patient may be presumed to be incompetent because he has been examined or treated for mental illness, regardless of whether such evaluation or treatment was voluntarily or involuntarily received."

In *Carroll v. Cobb,* 139 *N.J.Super.* 439, 455, 354 *A.*2d 355 (App.Div.1976), we held that residence at a state school for the mentally retarded did not per se render an individual, who otherwise meets all other voting requirements, ineligible to vote. *Carroll* involved a challenge by residents of New Lisbon State School for the Mentally Retarded. The Clerk of the Township of Woodland and the Burlington County Board of Elections had refused to process their voter registration forms. The Clerk and the Board argued that by virtue of the fact that an individual receives residential services from an institution established to provide services for individuals with developmental disabilities, they cannot be eligible to exercise the franchise. *Carroll, supra,* 139 *N.J.Super.* at 448, 354 *A.*2d 355.

We specifically rejected this contention and held that "residence at [a state school for the mentally retarded] does not *per se* render one who meets all other voting requirements ineligible to vote." *Id.* at 455, 354 *A.*2d 355. We concluded that as long as the voters were bona fide residents of the township, "were properly registered and were not otherwise disqualified, they were entitled to vote." *Id.* at 456, 354 *A.*2d 355. This holding did not "foreclose the county board of elections, *on an individual basis and for specifically stated reasons,* from reviewing and challenging the voting qualifications of any member of the class, so long as it is done in the manner provided by law." *Ibid.* (emphasis supplied).

In *Carroll,* we underscored the need for a particularized showing of incompetence by expert testimony by observing,

> It should be abundantly evident that a lay person is completely unequipped to determine whether an applicant is either an "idiot" or an "insane person," as those terms are used in the Constitution and the statute, and thus disenfranchised. Indeed we suspect that those imprecise terms may be troublesome to experts in the fields of psychiatry or psychology.
>
> [*Id.* at 448, 354 *A.*2d 355].

We reasoned "that a mentally retarded person need not be an 'idiot,' and a mentally ill person need not be 'insane.'" *Id.* at 450, 354 *A.*2d 355. Thus, we reaffirmed the principle set forth in the commitment statute that no presumption of incompetence arises from being treated at a mental institution. A separate adjudication of incompetence is required. *Id.* at 449, 354 *A.*2d 355. We note that for purposes of challenging any voter, on competing or any other ground, a complete list of the names and addresses of all registered voters is made available to any voter. In addition, once every calendar year, the State Committee of each political party may request the registry list. *Ibid.*

Here, no evidence was adduced regarding the competency of the challenged voters. Therefore, the judge had no option but to reject the challenge. Their ballots should have been counted.

NJPA's second contention is that the burden of proof falls on those seeking to challenge the patients' right to vote. Again, we agree. Voting is a fundamental right. *Reynolds v.*

*Sims*, 377 *U.S.* 533, 560, 84 *S.Ct.* 1362, 1380, 12 *L.Ed.*2d 506, 526 (1964); *Gangemi v. Rosengard*, 44 *N.J.* 166, 170, 207 *A.*2d 665 (1965). As with all fundamental rights, there can be no interference with an individual's right to vote, "unless a compelling state interest to justify the restriction is shown." *Worden v. Mercer County Bd. of Elections*, 61 *N.J.* 325, 346, 294 *A.*2d 233 (1972). Similarly, the burden of demonstrating that an individual is incompetent requires proof that is clear and convincing. *See In Re Grady*, 85 *N.J.* 235, 265, 426 *A.*2d 467 (1981). Therefore, those who seek to deprive an individual of a fundamental right must meet a clear and convincing burden of proof.

In *In the Matter of M.R.*, 135 *N.J.* 155, 159, 638 *A.*2d 1274 (1994), the Supreme Court addressed the issue of whether a developmentally disabled woman, who is generally incompetent, bears the burden of proof to show she had the capacity to choose with which of her divorced parent she would live. In this case, M.R. wanted to live with her father. *Matter of M.R.*, *supra*, 135 *N.J.* at 160, 638 *A.*2d 1274. The Supreme Court held that M.R.'s mother, the challenger, bore the burden to show that M.R. lacked the capacity to make her own choice. *Id.* at 169, 638 *A.*2d 1274. The Court reasoned that the right of self-determination is a fundamental right, *id.* at 166, 638 *A.*2d 1274, and as such, the burden of proof must fall upon the challenger of that right, *id.* at 169, 638 *A.*2d 1274.

Applying that principle here, it follows that the burden fell on the challengers to prove the patient's incompetence. Because there was no evidence presented as to the competence of the voters, the trial judge erred by segregating the ballots.

▇▇▇▇ Finally, the Attorney General contends that the judge's decision to segregate the ballots was not an appropriate determination and was not in accordance with *N.J.S.A.* 19:57-24. We agree. New Jersey law provides that,

[d]isputes as to the qualifications of military service or civilian absentee voters to vote or as to whether or not or how any such military or civilian absentee ballot

shall be counted in such election shall be referred to Superior Court for determination.

[*N.J.S.A.* 19:57–24]

Here, we have such a dispute. The Board was deadlocked. Therefore, the issue was properly referred to the Superior Court for determination. "Determination" means that the court has a duty to decide the validity or invalidity of the ballots based on statutes or case law authority. Merely segregating the ballots for a possible future disposition does not constitute a determination.

█ We understand that the judge was concerned that the election result could be tainted if the ballots were allowed to be counted, but thereafter found to have been cast by individuals who were disqualified on competency grounds. However, the Legislature has provided a procedure to contest an election result. *N.J.S.A.* 19:29–1 to –14. An election can be contested upon specific statutory grounds, including "when illegal votes have been received ... sufficient to change the result." *N.J.S.A.* 19:29–1(e). This statutory scheme permits challenge to votes cast by absentee ballots, but it does not authorize the segregation of absentee ballots prior to counting them. This is applicable to all challenges. We have no warrant to create an exception for challenges based on competency.

Accordingly, the order to segregate the challenged ballots is reversed. These ballots should be opened and counted.