**Vaciliki NICOLAS; Stratus C. Nicolas, as the Natural Guardian Ad Litem for Vaciliki Nicolas; Stratus C. Nicolas, in his own right,**

v.

**OCEAN PLAZA CONDOMINIUM AS-SOCIATION, INC; the Law Firm of Corodemus and Corodemus; Steven J. Corodemus, Esq. The Estate of Vaci-liki Nicolas and Stratus C. Nicolas as Administrator Ad Pros, Appellants.**

No. 02–3044.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) July 17, 2003.

Decided Aug. 27, 2003.

538

Anthony J. Brady, Jr., Camden, NJ, for Appellant.

Elizabeth A. Daly, Heim & McEnroe, Florham Park, NJ, for Appellee.

Before MCKEE, BARRY, and WEIS, Circuit Judges.

OPINION

BARRY, Circuit Judge.

Plaintiffs appeal the June 24, 2002 order of the United States District Court, which granted summary judgment to defendant Ocean Plaza Condominium Association and denied plaintiffs' cross-motion for summary judgment.[1] The central issue on appeal is whether the District Court erred in determining that plaintiffs' claims, brought pursuant to the Fair Housing Amendments Act ("FHAA"), 42 U.S.C. § 3601 *et seq.*, and the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. § 10:5–1 *et seq.*, were time-barred. Specifically, the question for us is whether the two-year statute of limitations should be tolled (1) because plaintiff Vaciliki Nicolas was legally insane during the relevant time period or (2) under the continuing violation doctrine.

We find, first, that Stratus Nicolas' FHAA and LAD claims are time-barred; indeed, he did not allege that even one incident of harassment occurred during the two years prior to him filing suit. Vaciliki Nicolas' FHAA claim is also time-barred, because her senility did not constitute an extraordinary circumstance for purposes of the federal tolling doctrine and because the continuing violation doctrine did not apply.

Vaciliki Nicolas' LAD claim, on the other hand, may not be time-barred, because New Jersey law provides for the tolling of

---

1. The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and we have jurisdiction under 28 U.S.C. § 1291.

statutes of limitations due to insanity. Stratus Nicolas' deposition testimony regarding his mother's state of mind was sufficient to create an issue of material fact as to whether such tolling was appropriate. Therefore, we will remand to the District Court for further proceedings in accordance with this opinion.[2]

## I.

Plaintiff Stratus Nicolas, who is himself mentally ill and suffers from various physical ailments, was his mother Vaciliki Nicolas' sole caregiver until her death in January of 2001 at the age of 102. During her later years, Vaciliki Nicolas used a wheelchair, was legally blind, was hard of hearing and suffered from senile dementia.

In the early 1990s, Mr. Nicolas purchased a condominium at Ocean Plaza, and he and his mother moved into a first floor unit in 1992. The development consists of 62 units on six floors. Its parking garage contains approximately 124 parking spaces, two for each unit.

Mr. Nicolas claims that at the time he moved in, he notified defendant Ocean Plaza of his mother's disabilities and that she required a parking space close to the elevator. At first, he was permitted to use a parking space next to the east elevator, although it was not a space designated for his unit. Approximately six months after he moved in, however, he was required to stop using that space but was permitted to use another space, also not designated for his unit, 25 or 30 feet from the first space. Later, he was assigned to a space designated for his unit, a space about 150 feet from both elevators. Mr. Nicolas contends that he complained to defendant about the parking space issue in 1993 and 1994. The record contains at least six maintenance fee checks from 1994 and 1995 on which he recorded his complaints about his parking space.

On May 30, 2000, Stratus Nicolas sued Ocean Plaza on his own behalf and on behalf of his mother.[3] The first count of the complaint alleged that Ocean Plaza denied Vaciliki Nicolas a reasonable accommodation, namely the parking space she believed she required, in violation of the FHAA and the LAD. The second count alleged that Ocean Plaza harassed Stratus Nicolas in retaliation for asserting his mother's rights, also in violation of the FHAA and LAD.[4] Ocean Plaza moved for summary judgment which, as noted above, the District Court granted on the ground that all of plaintiffs' claims were time-barred. This appeal followed.[5]

---

2. Plaintiffs also argue that summary judgment should have been granted on Vaciliki Nicolas' claims because they do not survive her death and because there is no issue of material fact as to whether the parking space that Stratus Nicolas desired was necessary for Vaciliki Nicolas to have an equal opportunity to use and enjoy her dwelling. As these claims were not addressed by the District Court, we do not address them here.

3. The caption of the complaint described Stratus Nicolas as his mother's "Natural Guardian *Ad Litem.*" Vaciliki Nicolas passed away in January 2001. Stratus Nicolas as *"Administrator Ad Pros"* of the estate of Vaciliki Nicolas may have since been substituted as a party.

4. The complaint also contained a third count which named as defendants the attorneys who represented Mr. Nicholas when he purchased his condominium. This count was dismissed by stipulation of the parties and is not at issue on appeal.

5. We exercise plenary review over the District Court's grant of summary judgment, and accordingly apply the same standard as the District Court. *Wastak v. Lehigh Valley Health Network,* 333 F.3d 120, 124 (3d Cir.2003). That is, summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "A fac-

## II.

■ Plaintiffs' argument that their claims are timely under the continuing violation doctrine must be rejected.[6] There was no continuing violation as neither the denial of a preferable parking space nor any incident of harassment occurred during the two years prior to suit. Mr. Nicolas' arguments that a new statute of limitations commenced every day that his mother was denied an appropriate parking space and also when defendant filed its answer to the complaint are founded on a misunderstanding of the relevant law. As we have explained, the continuing violation doctrine applies where there is a facially discriminatory policy; in such cases, a claim becomes ripe when the policy is applied, not at the time of adoption. *See Courtney v. La Salle Univ.*, 124 F.3d 499, 506 (3d Cir.1997). A plaintiff may not rely on the continuing violation doctrine to advance claims about isolated instances of discrimination concluded in the past, even though the effects persist into the present. *Id.* at 505. Both Vaciliki Nicolas' claim that she was denied a parking space to which she was entitled and Stratus Nicolas' claim that he was harassed in retaliation for asserting his mother's rights are about isolated instances of alleged discrimination concluded in the past. Because the continuing violation doctrine is inapplicable here, all of Stratus Nicolas' claims are time-barred.

■ With regard to Vaciliki Nicolas' FHAA claim, plaintiffs argue that even if the continuing violation doctrine does not apply, the statute of limitations should be tolled due to her senile dementia or insanity. "[M]ental incompetence is not *per se* a reason to toll the statute of limitations in federal actions."[7] *Lake v. Arnold*, 232 F.3d 360, 371 (3d Cir.2000). Under federal tolling principles, which apply to federal statutes of limitations, a statute may be tolled when the plaintiff " 'in some extraordinary way has been prevented from asserting his or her rights.' " *Id.* at 370. Tolling is appropriate under any one of the following three general scenarios: "(1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum." *Id.* at 370 n. 9. Here, plaintiffs do not allege that Ocean Plaza actively misled them or that they asserted their claims in the wrong forum; they argue only that the statute of limitations should be tolled due to Vaciliki Nicolas' senile dementia.

As the District Court held, Vaciliki Nicolas' putative mental disability did not constitute an extraordinary circumstance which prevented her from filing suit. In 1993, 1994 and 1995, Stratus Nicolas made repeated complaints to the defendant as well as to a host of government agencies and entities on his mother's behalf. He has not established that there was a rea-

---

tual dispute is material if it bears on an essential element of the plaintiff's claim, and is genuine if a reasonable [fact-finder] could find in favor of the nonmoving party." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 580 (3d Cir.2003).

**6.** In plaintiffs' reply brief, they argue that Ocean Plaza should not have been permitted to wait until the summary judgment stage to raise the statute of limitations defense. In its answer to the complaint, however, defendant's 22nd affirmative defense was that the cause of action was barred by the statute of limitations and/or repose.

**7.** The FHAA has its own statute of limitations. *See* 42 U.S.C. § 3613(a)(1)(A) (providing for a two-year statute of limitations for housing discrimination claims).

son why he could not have also filed a lawsuit on her behalf. Moreover, where we have "permitted equitable tolling for mental disability in the past, the plaintiff's mental incompetence motivated, to some degree, the injury that he sought to remedy." *Id.* at 371. This is not the case here, as there is no allegation that Vaciliki Nicolas needed the parking space closest to the east elevator for reasons related to her mental, as opposed to physical, disability.

■ In contrast to the federal statute of limitations, the New Jersey statute is subject to tolling due to the insanity of the potential plaintiff. *See* N.J.S.A. 2A:14–21 ("If any person ... is or shall be, at the time of any such cause of action ... accruing, under the age of 21 years, or insane, such person may commence such action ... within such time as limited by said sections, after his coming to or being of full age or of sane mind."). "The New Jersey courts have held that to be 'insane' within the meaning of the statute, a plaintiff need not suffer from a mental illness that requires commitment or institutionalization ... Nonetheless, the plaintiff must suffer from 'such a condition of mental derangement as actually prevents the sufferer from understanding his legal rights or instituting legal action.'" *Todish v. CIGNA Corp.,* 206 F.3d 303, 305–306 (3d Cir.2000) (citations omitted).

■ The District Court declined to credit Mr. Nicolas' testimony regarding his mother's degree of impairment, finding that "little weight can reasonably be given to the mere conclusory statements of Stratus Nicolas, a layperson, that his mother was senile." *Nicolas, et al. v. Ocean Plaza Condominium Assoc., et al.,* No. 02–3044, slip op. at 8 n. 3 (D.N.J. June 24, 2002). We note, however, that a layperson's testimony in federal court is governed by Federal Rule of Evidence 701, which provides that such testimony may include inferences and opinions as long as they are "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702[, regarding testimony by experts]." Fed.R.Evid. 701.

Moreover, expert testimony is not required to establish whether or not a litigant is "insane" for purposes of N.J.S.A. 2A:14–21.[8] In *Todish,* we relied heavily on the plaintiff's own affidavit in determining whether or not to toll the statute of limitations. *See Todish,* 206 F.3d at 306. We found as a matter of law that the actions the plaintiff was able to take—which included attempting to hire counsel to represent her at a grievance hearing, trying to obtain a transcript of that hearing on two occasions, requesting information from the union representative at the hearing about taking an appeal if the result were unfavorable, repeatedly applying for Social Security benefits, seeking reconsideration of the denial of those benefits, retaining counsel on a contingency basis to repre-

---

**8.** Cases addressing the question of what evidence is required to establish insanity or incompetence in the criminal justice and voting rights contexts are not readily applicable here. *See In re Absentee Ballots Cast by Five Residents of Trenton Psychiatric Hosp.,* 331 N.J.Super. 31, 750 A.2d 790, 793 (2000)(voters may not be disenfranchised without a particularized showing of incompetence by expert testimony); *State v. Whitlow,* 45 N.J. 3, 210 A.2d 763, 767 (1965)(holding that it was extremely unlikely that lay testimony would be relied on exclusively to determine whether a defendant charged with crime was (1) mentally incapable of standing trial or (2) innocent by reason of insanity).

sent her on appeal, applying for disability pension benefits, teaching at the college level and pursuing higher education—precluded a finding that she was impaired such that she could not understand her legal rights.

Turning to the facts of this case, Mr. Nicolas retired in 1990 and cared for his mother full-time until her death in January of 2001, giving him ample opportunity to interact with and observe her and to form an opinion as to her ability to understand her legal rights. Mr. Nicolas testified that his "mother would wake up on days and call me by my, you know, sisters' names or whatever. Or she'd be back in Greece, you know, talking to her sister and her mother. But she was lucid, you know, if I said ice cream, or whatever, I could get through to her." He described a meeting that he attended with his mother and noted that "she didn't understand a thing. She could not understand." Finally, he testified that various individuals had harassed his mother but added the caveat that his "mother, of course, didn't realize what was going on." Indeed, the parties agree that Vaciliki Nicholas suffered from senile dementia.

Viewing this evidence in the light most favorable to the non-moving party, as we must, a genuine issue of material fact exists as to whether Vaciliki Nicolas was "insane" for purposes of tolling the New Jersey statute of limitations applicable to her LAD claim.[9] A reasonable fact-finder could conclude based on Mr. Nicolas' testimony that in her later years his mother's senility was so advanced that she was essentially unaware of her surroundings, with her comprehension limited to the simplest of life's pleasures, such as ice cream. It would not be unreasonable to infer from this that Vaciliki Nicolas was unable to understand her legal rights or institute legal action on her own behalf. We, therefore, remand for further proceedings in accordance with this opinion.[10]

---

**9.** In addition to holding that there was no issue of material fact with regard to Vaciliki Nicolas' sanity, the District Court held that regardless of whether she was insane, her son was acting as her legal guardian and could have brought suit on her behalf. The Appellate Division of the New Jersey Superior Court, however, has held that there is no reason to deviate from the language of the statute, which "starts the limitation period running 'after [the injured person's] coming to or being of full age or of sane mind.' N.J.S.A. 2A:14–21. The statute does not provide that the appointment of a guardian for an insane person triggers the running of the limitations period." *Unkert by Unkert v. General Motors Corp.*, 301 N.J.Super. 583, 694 A.2d 306, 309 (1997). *See also Kisselbach v. County of Camden*, 271 N.J.Super. 558, 638

A.2d 1383, 1387 (1994)("The statute does not condition tolling on the absence of others who may be legally authorized to act for the insane person."); *Hackensack University Medical Center v. Rossi*, 338 N.J.Super. 139, 768 A.2d 254, 262 (1998)(same). The appointment of a guardian may be relevant to whether a non-statutory, equitable defense to the statute of limitations applies. *See Kisselbach*, 638 A.2d at 1387 (citing *Kyle v. Green Acres at Verona, Inc.*, 44 N.J. 100, 207 A.2d 513 (1965)).

**10.** We leave to the District Court the preliminary question of whether to exercise supplemental jurisdiction over Vaciliki Nicolas' LAD claim in light of the fact that there are no remaining federal claims. *See* 28 U.S.C. § 1367(c)(3).