909 A.2d 1144 (2006)
388 N.J. Super. 571
The ESTATE OF Vaciliki NICOLAS and Stratus C. Nicolas, as Administrator Ad Pros, Plaintiffs-Appellants,
v.
OCEAN PLAZA CONDOMINIUM ASSOCIATION, INC., Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued September 12, 2006.
Decided November 16, 2006.
*1146 Anthony J. Brady, Jr., Camden, argued the cause for appellants.
Elizabeth A. Daly, Florham Park, argued the cause for respondent (Heim & Lamastra, attorneys; Ms. Daly, on the brief).
Before Judges SKILLMAN, HOLSTON, Jr. and GRALL.
The opinion of the court was delivered by
JOHN S. HOLSTON, JR., J.A.D.
This case involves a disability discrimination claim under the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49, for failure of a condominium association to provide a disabled resident of a multiple unit condominium building a reasonable parking space accommodation. We hold that Sections 5-4.1 and 5-12(g) of the LAD provide a cause of action for disability discrimination based upon the failure of a condominium association to provide a disabled resident, of a multiple unit condominium building, a reasonable parking space accommodation sufficient to afford her an equal opportunity to the use and enjoyment of her condominium unit.[1] We also conclude that plaintiff produced sufficient evidence of such discrimination to require denial of defendant's motion for summary judgment.
In 1992, plaintiff Stratus C. Nicolas purchased in his name alone, a condominium unit for him and his mother, Vaciliki Nicolas (Ms. Nicolas), at the Ocean Plaza Condominium. He bought unit number 107, a ground-level unit, while construction was still under way. He and his mother moved into the unit in 1992, although construction was not completed until 1994 or 1995.
In 1990, plaintiff retired from his position as a schoolteacher and became his mother's sole caretaker, until her death. During the last ten years of her life, Ms. Nicholas was wheelchair bound, legally blind, deaf in one ear, and totally dependent upon plaintiff.
The condominium development consists of sixty-two units on six floors. The parking area is located on one level, with approximately 124 parking spaces, two for every unit. Plaintiff contends that prior to purchasing his unit, he informed the condominium's agents that his purchase of the unit was contingent upon there being a ramp-accessible apartment on the first *1147 floor and a disabled parking space next to the elevator.
When plaintiff moved into the condominium in early 1992, he began using a parking space located next to the east elevator, which was not the space designated for his unit. Since the rest of the building was not yet occupied, he was able to use the space without incident. Six months after he moved in, a new resident purchased the unit that corresponded with the parking space plaintiff was using. Accordingly, he was asked by the building realtors to park in his assigned space instead.
Plaintiff complained to defendant Ocean Plaza Condominium Association that because of his mother's handicaps he should have been permanently assigned the parking space next to the elevator that he had been using. Instead he was offered a parking space designated for unit 605, twenty-five to thirty feet directly across from the space by the east elevator, which plaintiff had been using. Plaintiff claimed that this parking space decreased accessibility to the elevator, was in a dark area, and required his mother to cross into traffic to get to the elevator.
In 1993, when unit 605 was sold, plaintiff's parking space was moved to the space designated for plaintiff's unit. That space was in the center of the parking facility, equidistant between both the east and west elevators, and approximately 150 feet from the parking space at the building's entrance. From 1993 through 1995, plaintiff continued complaining to defendant about the lack of a parking space accommodation.
On April 11, 1996, the State charged defendant with failing to have proper accessible parking for the handicapped contrary to N.J.A.C. 5:23-7.1 to -7.31, the Barrier Free Subcode of the Uniform Construction Code. Defendant pled guilty to the charge and paid a fine of $500.
On April 30, 1995, Ms. Nicolas allegedly slipped and fell because of bad lighting in the parking lot. In 1998, defendant designated some parking spaces as handicapped. None were close to the elevator. Plaintiff was offered one of the newly designated spaces, which was closer than his assigned space, but still approximately seventy-five feet from the east elevator. According to plaintiff, the designated handicapped spaces forced a disabled person to enter into the path of traffic without a clear view.
Plaintiff has remained in his assigned parking space since 1993. At his request in 1998 or 1999, a light was placed over the parking space. Plaintiff claims that the only parking space that would have satisfied his mother's needs was the original space he occupied near the east elevator.
Plaintiff, individually and as guardian ad litem for Vaciliki Nicolas, sought relief for his and his mother's claims for handicapped discrimination under the Fair Housing Amendments Act (FHAA), 42 U.S.C. § 3601-19, and LAD in the Federal District Court of New Jersey. In his federal complaint, filed May 30, 2000, plaintiff alleged that Ms. Nicolas was disabled and was denied by defendant a reasonable accommodation for her disability in the form of a proper handicapped parking space in the parking lot of their condominium. Plaintiff sought money damages for his mother's emotional stress and physical injuries from a fall in the parking lot and for her emotional stress for retaliatory harassment, as well as equitable relief. Ms. Nicolas died in January 2001 at the age of 102. Plaintiff continued his federal lawsuit as administrator ad prosequendum (administrator ad pros) of the Estate of Vaciliki Nicolas.
On June 24, 2002, the District Court granted defendant's motion for summary *1148 judgment. In its unpublished written opinion, the District Court held that all claims under the FHAA and LAD were time-barred. Nicolas v. Ocean Plaza Condominium Ass'n, No. 02-3044 (D.N.J. June 24, 2002).
Plaintiff appealed to the Third Circuit Court of Appeals, which on August 27, 2003, in Nicolas v. Ocean Plaza Condominium Association, 73 Fed.Appx. 537 (3rd Cir.2003), affirmed the District Court's ruling in part and reversed in part. The court held that the federal tolling doctrine and the continuing violation doctrine did not apply to plaintiff's and his mother's FHAA claims, and as a result the causes of action under the FHAA were time-barred. Id. at 538-40. Although the court found that plaintiff's LAD claim was time-barred by N.J.S.A. 2A:14-2, the court left open the question of whether his mother's LAD claim would be considered time-barred. Id. at 542. In support of his contention that his mother's insanity would toll the running of the statute of limitations, defendant relied upon his deposition testimony concerning his mother's mental condition. "Mother would wake up on days and call me by my, you know, sisters' names or whatever. Or she'd be back in Greece, you know, talking to her sister and her mother. But she was lucid, you know, if I said ice cream, or whatever, I could get through to her." The court stated that this testimony created an issue of fact as to whether tolling was appropriate and remanded the case to the District Court for further proceedings.
Upon remand, the District Court, on November 14, 2003, declined to exercise supplemental jurisdiction over the State LAD claim and dismissed the claim of Ms. Nicolas pursuant to 28 U.S.C. § 1367(c)(3). Plaintiff filed his State complaint on December 1, 2003.[2]
In lieu of filing an answer, defendant filed a motion for summary judgment. Plaintiff provided a certification from Dr. Graham Morgenstern, Ms. Nicolas' general physician. Dr. Morgenstern certified that: "Ms. Nicolas was mentally insane prior to 1992 and continued until her death in January of 2001 as a result of Alzheimer's disease and alcoholic dementia. . . . Ms. Nicolas during this time period was not aware of her legal rights because of her disability." Plaintiff also provided a letter from Dr. Gerald Grubman, Ms. Nicolas' treating urologist, dated September 1, 2004. Dr. Grubman wrote that during the time that he treated Ms. Nicolas for various urological conditions, she had "an associated condition of senile dementia."
On January 25, 2005, defendant supplied the court with transcripts of the doctors' depositions. Dr. Morgenstern testified that Ms. Nicolas did not come under his care until September 20, 1994, and that he, therefore, had no personal knowledge of her condition prior to that date. He testified that he always had difficulty communicating with Ms. Nicolas because of her mental status, which he summarized as a state of general confusion when she visited his office. He diagnosed Ms. Nicolas with dementia in October 1994 and testified that her mental condition deteriorated until her death. With respect to Ms. Nicolas' understanding of her legal rights, Dr. Morgenstern stated, "I have nothing concrete. Just it's my impression, it's my belief that from my examination, from knowing her, that she didn't know what her rights were."
*1149 Dr. Grubman was also deposed on December 22, 2004. He testified that Ms. Nicolas had come under his care in 1990 for chronic urinary infections. He indicated that he experienced difficulty in communicating with Ms. Nicolas and often found her to be confused. As to Ms. Nicolas' knowledge of her legal rights, Dr. Grubman stated, "I just can't comment about people understanding legal rights, but certainly she did not understand any of our interactions patient-physician wise." He testified that, "from day one . . . she was not able to answer my questions clearly. This was obviously an elderly, confused, demented, whatever you want to [say], woman."
On February 4, 2005, the court granted defendant's motion for summary judgment on the basis that plaintiff's complaint was time-barred pursuant to the N.J.S.A. 2A:14-2 two-year statute of limitations for LAD claims and because plaintiff failed to state a valid claim under LAD. In so holding, the court stated,
Plaintiff is required to make a prima facie showing that his mother was insane and that such condition was a bona fide basis for tolling of the statute of limitations.
. . . .
He has . . . failed to show that there was any impediment to the filing of this cause of action prior to June 30, 1995 as his mother's guardian. Defendant's motion is therefore granted dismissing plaintiff's complaint for failure to comply with the statute of limitations.
Defendant also asserts that the plaintiff's complaint should be dismissed for failure to state a claim upon which relief may be granted because there is no provision of the LAD which permits plaintiff's cause of action based upon a failure to provide a parking space.
. . . .
Plaintiff has failed to present any credible proofs which support such a claim. Plaintiff was provided with a handicapped space that was closer than his assigned spot but rejected it. Indeed he insisted on parking in the same spot since 1993 on the basis that the only spot that he would accept or that he believed was acceptable to him . . . was closest to the elevator.
While the space next to the elevator may have been more convenient to plaintiff, he has failed to offer any proof that the unavailability of that one space constituted a violation of the LAD.
Viewing the proofs in the light most favorable to the plaintiff, he has failed to assert any credible facts that can sustain a finding in his favor by a reasonable fact finder. The defendant is therefore entitled to judgment as a matter of law on that claim as well.
On April 14, 2005, the court heard oral argument on plaintiff's motion for reconsideration. The court denied plaintiff's motion, noting:
[T]here's no indication that Ms. Nicolas would ever have been able to assist in the preparation of the case because she was never involved in any of the events or decisions that formed the basis of plaintiff's cause of action.
Plaintiff appeals the Law Division's February 4, 2005 order granting summary judgment and the April 14, 2005 order denying reconsideration. We reverse.
Plaintiff presents the following arguments for our consideration:
POINT I
THE MOTION JUDGE INCORRECTLY CONCLUDED THAT PLAINTIFF'S CLAIM UNDER LAD WAS TIME-BARRED.
POINT II

*1150 THE MOTION JUDGE INCORRECTLY CONCLUDED THAT DEFENDANT WAS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF WAS UNABLE TO STATE A CAUSE OF ACTION FOR HANDICAPPED DISCRIMINATION UNDER LAD.
We review the trial court's grant of defendant's motion for summary judgment de novo, applying the same legal standard as the trial court under Rule 4:46-2(c). Antheunisse v. Tiffany & Co., Inc., 229 N.J.Super. 399, 402, 551 A.2d 1006 (App. Div.1988), certif. denied, 115 N.J. 59, 556 A.2d 1206 (1989). Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29, 666 A.2d 146 (1995) (quoting R. 4:46-2(c)).
In determining whether there is a genuine issue of material fact for summary judgment purposes, the judge must accept as true all evidence that supports the position of the party defending against the motion, and accord that party the benefit of all legitimate inferences, which can be deduced therefrom. Id. at 536, 666 A.2d 146. "If reasonable minds could differ, the motion must be denied." Id. at 535, 666 A.2d 146 (quoting Pressler, Current N.J. Court Rules, comment on R. 4:40-2 (1991)).

I.

A.
The New Jersey LAD does not contain a specific period of limitations within which actions seeking relief under the statute must be commenced. In Montells v. Haynes, 133 N.J. 282, 291-92, 627 A.2d 654 (1993), our Supreme Court held that a LAD claim falls under N.J.S.A. 2A:14-2 and that a two-year period of limitations should be applied to such claims. It is undisputed that the events leading to this cause of action took place in 1993, ten years prior to the filing of plaintiff's survivorship complaint in December 2003.
N.J.S.A. 2A:14-21, which applies to any claim under N.J.S.A. 2A:14-2, including any claim under LAD, states in applicable part:
If any person entitled to any of the actions or proceedings specified in [various statutes] of this title . . . is or shall be, at the time of any such cause of action or right or title accruing, under the age of 21 years, or insane, such person may commence such action or make such entry, within such time as limited by those statutes, after his coming to or being of full age or of sane mind.
[(emphasis added).]
In accordance with this statute, the statute of limitations for plaintiff's cause of action is tolled only if Ms. Nicolas qualifies as insane. Therefore, this court must decide whether there was a genuine issue of material fact as to Ms. Nicolas' insanity, which would preclude summary judgment. Brill, supra, 142 N.J. at 528-29, 666 A.2d 146.
Our Supreme Court, in Kyle v. Green Acres at Verona, Inc., 44 N.J. 100, 207 A.2d 513 (1965), specifically addressed the meaning of the word "insane" for purposes of N.J.S.A. 2A:14-21. The Court stated that "insane in the statute of limitations means such a condition of mental derangement as actually prevents the sufferer from understanding his legal rights or instituting legal action." Id. at 113, 207 A.2d 513.
*1151 Defendant argues that plaintiff failed to provide any proof of Ms. Nicolas' insanity, because no expert report attesting to her insanity was presented. We disagree. We are convinced that a person's insanity for purposes of N.J.S.A. 2A:14-21 can be established under N.J.R.E. 701, through the testimony of laypersons, without the presentation of expert testimony. N.J.R.E. 701 provides, "[a][lay] witness' testimony in the form of opinions or inferences may be admitted if it (a) is rationally based on the perception of the witness and (b) will assist . . . in determining an issue." The "lay witnesses must have actual knowledge, acquired through the use of his or her senses, of the matter to which he or she testifies." State v. LaBrutto, 114 N.J. 187, 197, 553 A.2d 335 (1989); see also In re McCraven, 87 N.J. Eq. 28, 30, 99 A. 619 (Ch.1916) (holding that "[a] witness, not an expert, may, in a case of insanity, state facts as to the actions of the alleged lunatic, and then tell what, in his or her opinion, they indicate as to soundness or unsoundness of mind"). Additionally, the Third Circuit in Nicolas, supra, noted that "expert testimony is not required to establish whether a litigant is `insane' for purposes of N.J.S.A. 2A:14-21." 73 Fed.Appx. at 541.
In plaintiff's State litigation, he has supplemented his own testimony of his mother's mental limitations from 1990, when he became his mother's caretaker, until her death in January 2001, with the certification and deposition testimony of Dr. Morgenstern and the letter and deposition testimony of Dr. Grubman, Ms. Nicolas' personal physicians. Although neither physician is a psychiatrist, their evaluations of her mental condition indicated that her mental functioning was seriously impaired at least as of 1994, as to Dr. Morgenstern, and as of 1990, as to Dr. Grubman. In the absence of any evidence that there was a sudden deterioration of Ms. Nicolas' mental condition, such as from a stroke, their opinions support plaintiff's lay opinion regarding Ms. Nicolas' mental condition in 1993.
Therefore, we conclude that the evidence presented by plaintiff creates a genuine issue of material fact as to whether Ms. Nicolas' mental state from 1993, when her cause of action accrued, until her death in January 2001, prevented her from understanding her legal rights or instituting legal action.

B.
The motion judge determined that as Ms. Nicolas' sole caretaker and guardian, plaintiff could have filed his complaint prior to June 30, 2005. Plaintiff testified that he had made all decisions concerning his mother's care from 1990 until her death in 2001. However, plaintiff was never appointed guardian for his mother through an incapacity proceeding pursuant to Rule 4:86.
In Unkert v. General Motors Corp., 301 N.J.Super. 583, 590, 694 A.2d 306 (App. Div.), certif. denied, 152 N.J. 10, 702 A.2d 350 (1997), we held that N.J.S.A. 2A:14-21 tolled the statute of limitations period for a person who is insane at the time a cause of action accrued, and that the limitations period did not begin to run on the appointment of a guardian. Id. at 593, 694 A.2d 306. We pointed out that "it would be contrary" to the language of N.J.S.A. 2A:14-21 if the tolling were to be terminated on the appointment of a guardian and "would ignore the fact that so long as the injured party remains incompetent, he is unable to assist in the preparation and presentation of his case." Id. at 592, 694 A.2d 306. We also stated that to condition tolling upon the appointment of a guardian would "constitute unjustifiable tampering with the significant public policy clearly *1152 reflected in the [tolling statute,] the protection and preservation of substantive rights of mentally incompetent persons." Id. at 593, 694 A.2d 306 (quoting Sahf v. Lake Havasu City Ass'n, 150 Ariz. 50, 721 P.2d 1177, 1181-82 (App.1986)). It follows a fortiori that if the tolling provision is not terminated on the appointment of a guardian for an incompetent person, the tolling provision is not terminated for a person who acts as a caretaker for an insane person, without formal appointment as a guardian.
In 2004, after our decision in Unkert, the Legislature amended N.J.S.A. 2A:14-21 to provide, "[n]otwithstanding the provisions of this section to the contrary, an action by or on behalf of a minor that has accrued for medical malpractice for injuries sustained at birth shall be commenced prior to the minor's 13th birthday, as provided in N.J.S.A. 2A:14-2." The legislative history of that amendment makes no reference to amending the tolling provision, as it pertains to insane persons, their caretakers, or guardians. We are convinced that the Legislature agreed with our interpretation of the tolling provision in Unkert and that if the Legislature intended that the tolling provision should not apply to the insane on appointment of a guardian, it would have amended the provision pertaining to the insane at the time of its 2004 amendment. See Mahwah Twp. v. Bergen County Bd. of Taxation, 98 N.J. 268, 279, 486 A.2d 818 (as a matter of statutory construction, the Legislature is presumed to have been aware of existing laws at the time it amends a statute), cert. denied, 471 U.S. 1136, 105 S.Ct. 2677, 86 L.Ed.2d 696 (1985). Therefore, we hold that the statute of limitations on the survivorship action, brought by plaintiff as administrator ad pros of his deceased mother's estate, did not accrue until Ms. Nicolas' death.

C.
Defendant also claims that plaintiff's action is barred by laches because he could have commenced suit on behalf of his mother at any time and that it was unreasonable for him to wait until 2000, six years after his last complaint and eight years after allegedly having been denied the only parking space he deemed appropriate, to institute suit. Defendant asserts that members of the condominium board have died or moved away since defendant learned about plaintiff's demand for a handicapped accommodation in 1993.
Plaintiff's complaint alleges a survivorship cause of action for damages for Ms. Nicolas' injuries caused by defendant's failure to provide a reasonable parking space accommodation. A survivorship claim is one that the decedent could have brought if she were alive. N.J.S.A. 2A:15-3 reads in applicable part: "Executors and administrators may have an action for any trespass done to the person or property real or personal, of their testator or intestate against the trespasser, and recover their damages as their testator or intestate would have had if he was living." Therefore, "[an executor or administrator] is entitled to recover the damages which the decedent sustained during [her lifetime.]" Model Civil Jury Charge § 6.15.
Generally, the defense of laches is available in the absence of a statute of limitations. Lavin v. Bd. of Educ. of Hackensack, 90 N.J. 145, 151, 447 A.2d 516 (1982); see also Borough of Princeton v. Bd. of Chosen Freeholders of Mercer, 169 N.J. 135, 157, 777 A.2d 19 (2001); Nw. Covenant Med. Ctr. v. Fishman, 167 N.J. 123, 140, 770 A.2d 233 (2001). Although the defense is available in limited circumstances where an equitable remedy is sought, "where a legal and an equitable remedy exist for the same cause of action, equity will generally follow the limitations *1153 statute." Lavin, supra, 90 N.J. at 153 n. 1, 447 A.2d 516; cf. Mancini v. Twp. of Teaneck, 179 N.J. 425, 432, 846 A.2d 596 (2004) (holding that laches is available in a LAD action where a continuing violation claim is asserted).
Plaintiff's survivorship action seeks damages on account of physical injury and emotional distress suffered by Ms. Nicolas resulting from discrimination asserted against her, contrary to LAD. The remedy demanded is legal. No equitable remedy is sought. Moreover, plaintiff's complaint does not assert a cause of action based on a continuing violation theory. We are convinced, therefore, that laches cannot be asserted as a defense to bar plaintiff's survivorship claim.

II.
Plaintiff contends that the motion judge erred in granting summary judgment dismissing his LAD claim. Plaintiff asserts that he presented a prima facie case of disability discrimination under N.J.S.A. 10:5-4.1 because of defendant's failure to provide his mother a reasonable accommodation for her disabilities by its failure to provide a handicapped parking space for her benefit next to the east elevator. Defendant argues that the trial court was correct in granting summary judgment because LAD does not provide a cause of action for failure to provide a condominium parking space to a unit owner. We are convinced that a violation of N.J.S.A. 10:5-4.1 and N.J.S.A. 10:5-12(g), evidenced by a violation of an administrative regulation adopted by the Department of Community Affairs (DCA), provides a cause of action for a disabled person when a condominium association fails to provide him or her with a reasonable accommodation.
N.J.S.A. 10:5-4.1 provides in relevant part, "[a]ll of the provisions of [LAD] . . . shall be construed to prohibit an unlawful discrimination against any person because such person is or has been at any time disabled." N.J.S.A. 10:5-12(g)(2) provides in relevant part:
It shall be . . . an unlawful discrimination:
g. For any person, including but not limited to, any owner . . . or any agent [of any person]:
(2) To discriminate against any person . . . because of . . . disability . . . in the terms, condition or privileges . . . of any real property or part or portion thereof or in the furnishing of facilities or services in connection therewith.
"It is well-established that the LAD is intended to be New Jersey's remedy for unacceptable discrimination and is to be construed liberally. . . . Among its other objectives, the LAD is intended to insure that handicapped persons will have `full and equal access to society, limited only by physical limitations they cannot overcome'". Franek v. Tomahawk Lake Resort, 333 N.J.Super. 206, 217, 754 A.2d 1237 (App.Div.2000) (quoting D.I.A.L., Inc. v. N.J. Dep't of Cmty. Affairs, 254 N.J.Super. 426, 439, 603 A.2d 967 (App.Div.1992)).
Further, a cause of action under LAD can be evidenced by a violation of administrative regulations promulgated by the DCA. In Franek, we determined that a wheelchair bound plaintiff, in an "affirmative accommodation claim" under LAD for handicapped discrimination against the owner of a private lake resort, is not precluded from showing by way of support for her argument of unlawful discrimination, the extent to which defendant did or did not comply with the provisions of the Handicapped Access Law (HAL), administered by DCA, N.J.S.A. 52:32-4 to -16. Id. at 215-16, 754 A.2d 1237. We stated:

*1154 There is no claim for relief under HAL and no need to establish a violation of that act. Plaintiff is nevertheless not precluded from showing, by way of support for her argument of unlawful discrimination, the extent to which defendants did or did not comply with HAL requirements. . . . A plaintiff in a civil action is not precluded from relevantly showing a violation of statute or administrative regulation as an element of proof.
[Ibid.]
In Oras v. Housing Authority of Bayonne, 373 N.J.Super. 302, 861 A.2d 194, (App.Div.2004), we determined that a housing authority's policy, prohibiting a tenant in a public housing apartment complex from having a dog weighing over 20 pounds, would be inconsistent with N.J.A.C. 13:13-3.4(f)(2),[3] if the pet were a reasonable accommodation to a paraplegic plaintiff's disability. Id. at 314, 861 A.2d 194. We made clear that a duty to provide a reasonable accommodation for a resident with a disability does not necessarily entail the obligation to do everything possible to accommodate such a person. Id. at 315, 861 A.2d 194. We determined that "[o]nly after a fact-sensitive evaluation of these factors, when viewed in light of the language and purposes of the relevant provisions of the . . . LAD and their concomitant regulations, can it be determined if the [Housing] Authority failed to reasonably accommodate plaintiff's disability when it required him to remove [his dog] from his apartment." Id. at 317, 861 A.2d 194 (emphasis added). "The requested accommodation must `enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability.'" Id. at 315, 861 A.2d 194 (quoting Bronk v. Ineichen, 54 F.3d 425 (7th Cir.1995)).
In Ellison v. Creative Learning Center, 383 N.J.Super. 581, 893 A.2d 12 (App.Div. 2006), we reversed the motion judge's grant of summary judgment of a diabetic student's complaint under LAD against a private pre-school. We rejected the motion judge's interpretation of LAD and its implementing regulations that the requirement of reasonable accommodations was applicable only to employment cases. Id. at 592, 893 A.2d 12. We also disagreed with the judge's rejection of federal precedent regarding public accommodations on the basis that LAD contained no specific prohibition of a failure to make reasonable accommodations. Ibid. We determined that LAD, as implemented through administrative regulation, is broader than the motion judge recognized. Ibid. We rejected the judge's conclusion that federal precedent construing the Americans with Disabilities Act could not be utilized in interpreting LAD, because reasonable accommodation is statutorily required under federal law, and it is not specified by New Jersey law in the context of an educational accommodation case. Id. at 594-95, 893 A.2d 12. We pointed out that federal law has long provided guidance to our courts in interpreting LAD. Id. at 594, 893 A.2d 12.
We note that the DCA has promulgated administrative regulations regulating parking spaces for handicapped people. In 1986, DCA adopted N.J.A.C. 5:23-7.2,[4] which incorporated by reference ANSI A117.1-1986. Section 4.6.1 of ANSI *1155 A117.1-1986 provides, "[p]arking spaces designated for physically handicapped people and accessible passenger loading zones shall be located on the shortest possible circulation route to an accessible entrance of the building." Ibid. The above stated ANSI regulation was attached to the April 11, 1996 accessible parking space violation to which defendant pled guilty and paid a fine.
Likewise, DCA promulgated N.J.A.C. 5:10-24.4, effective March 17, 1986, which provides:
Any owner of a multiple dwelling with five or more dwelling units which, provides parking to the occupants thereof, and in which a handicapped person resides, shall provide parking spaces for occupants who are handicapped located at the closest possible proximity to the principal accesses of the multiple dwelling.
Although there is no New Jersey case that has decided whether LAD provides a cause of action for disability discrimination for a condominium association's failure to provide a disabled resident of a multi-unit condominium building a reasonable parking space accommodation, there is federal authority interpreting FHAA and LAD, which supports the existence of such a cause of action. In accordance with Ellison, supra, this authority provides guidance for our decision.
In Shapiro v. Cadman Towers, Inc., 51 F.3d 328 (2d Cir.1995), the court, in a suit alleging handicapped discrimination under the FHAA, 42 U.S.C. § 3612, granted a handicapped plaintiff's motion for preliminary injunctive relief against a cooperative apartment complex. The court held that the defendant must provide the plaintiff with a parking space in her building's garage, regardless of their traditional waiting list policy.
In Gittleman v. Woodhaven Condominium Association., 972 F.Supp. 894 (D.N.J. 1997), the Federal District Court, in a suit brought by a handicapped man under the FHAA and LAD, followed the holding in Shapiro and held that "[t]he [condominium] association in its capacity as manager of the common elements, clearly had a duty to exercise its managerial decision consistent with the dictates of the FHAA, which in the case of a unit owner with a handicap, would mean assigning a parking spot close to his home." Id. at 902. The court also held that N.J.S.A. 46:8B-6 "cannot be read to prohibit the Association from accommodating Mr. Gittleman's alleged disability, because that would result in the other unit owners encroaching on Mr. Gittleman's rights under federal law, a result the statute expressly forbids.[5]"
In Sporn v. Ocean Colony Condominium Association, 173 F.Supp.2d 244 (D.N.J.2001), the plaintiff condominium owner, who suffered from severe spinal stenosis, which confined him to a wheelchair, asserted that the condominium association failed to accommodate his handicap, as required by the FHAA and LAD. The court cited to a number of cases, which have determined that the FHAA may, in certain instances, entitle a handicapped tenant to a reserved parking space adjacent to the tenant's dwelling. Ibid.
Based on the reasoning employed in the federal cases and consistent with our own *1156 case law, we hold that N.J.S.A. 10:5-4.1 and N.J.S.A. 10:5-12(g) provide a cause of action for disability discrimination to a resident of a multiple unit condominium building for the failure of the condominium association to provide a reasonable parking space accommodation in the parking lot common element sufficient to afford her an equal opportunity to the use and enjoyment of her condominium unit.

III.
In our review of the motion judge's grant of summary judgment, we must assume plaintiff's version of the facts is true and give plaintiff the benefit of all favorable inferences. Brill, supra, 142 N.J. at 535-36, 666 A.2d 146. We are satisfied that plaintiff has shown sufficient material facts in dispute as to whether a reasonable parking accommodation was made for Ms. Nicolas, given her multiple disabilities, to preclude the granting of summary judgment. Ms. Nicolas' disabilities included her need to use a wheel chair, being legally blind and hard of hearing, suffering from senile dementia, and being in need of a constant caretaker. We are also satisfied that there is a genuine issue of material fact as to whether Ms. Nicolas' alleged physical injury in the condominium parking lot was proximately caused by the failure of defendant to provide Ms. Nicolas with a reasonable parking space accommodation.
Plaintiff was provided with two parking spaces after being forced to leave the original space next to the elevator. The first space was twenty-five to thirty feet directly across from the original space, which plaintiff contends was in a dark area and required his mother to cross into traffic to use the elevator. Later, plaintiff was assigned a parking space that was approximately 150 feet from the original space and equidistant from both the east and west elevators. Defendant had been notified by plaintiff on several occasions of Ms. Nicolas disabilities and plaintiff's need for a parking space accommodation as a result of Ms. Nicolas' physical and mental disabilities. Therefore, we are satisfied that a jury should decide whether the accommodations offered were reasonable. Accordingly, we reverse the Law Division's February 4, 2005 order granting summary judgment and remand for further proceedings.
Reversed and remanded.
NOTES
[1] N.J.S.A. 10:5-4.1, by amendment approved September 12, 2003, substituted "disabled" for "handicapped" and "disability" for "handicap." N.J.S.A. 10:5-5(q), as amended in 2003, incorporated in its definition of disability the conditions previously included in the statute's definition of handicapped.
[2] As provided by 28 U.S.C. § 1367(d), plaintiff had thirty days after dismissal of the federal action to file his state action, notwithstanding the expiration of the State statute of limitations.
[3] N.J.A.C. 13:13-3.4(f)(2), adopted, under LAD, by the Division on Civil Rights, states, "it is unlawful for any person to refuse to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford a person with a disability equal opportunity to use and enjoy a dwelling."
[4] Effective April 5, 1999, N.J.A.C. 5:23-7.2 now incorporates by reference A117.1-1998.
[5] N.J.S.A. 46:8B-6 states that the "right of any unit owner to the use of the common elements shall be a right in common with all other unit owners (except to the extent that the master deed provides for limited common elements) to use such common elements in accordance with the reasonable purposes for which they are intended without encroaching upon the lawful rights of the other unit owners." The defendant does not raise this issue in this appeal.